# In the United States Court of Federal Claims

No. 18-1784C
Filed: October 30, 2020
FOR PUBLICATION

<table>
<tr>
<td>

**ROBERT J. LABONTE, JR.,**

                             *Plaintiff,*

**v.**

**UNITED STATES,**

                             *Defendant.*

</td>
<td>

Keywords: Motion to Dismiss; Jurisdiction; Failure to State a Claim; Rule 12(b)(1); Rule 12(b)(6); 10 U.S.C. § 1201; Military Disability Retirement; Court-Martial; 10 U.S.C. § 1552(f)

</td>
</tr>
</table>

*Renée A. Burbank*, Veterans Legal Services Clinic, Jerome N. Frank Legal Services Organization, New Haven, CT, with *Lernik Begian*, *Alexander M. Fischer*, and *Casey Smith*, law students, practicing pursuant to Rule 83.3 of the Rules of the Court of Federal Claims, for the plaintiff.

*Richard P. Schroeder*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with *MAJ Nicholas D. Morjal*, U.S. Army Legal Services Agency, Ft. Belvoir, VA, of counsel, for the defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

The plaintiff, Robert J. LaBonte, seeks correction of his military records to receive disability retirement, back pay, and retirement benefits. He was discharged from the Army by court-martial, receiving a Bad Conduct Discharge. The Army has since granted the plaintiff clemency, upgrading the characterization of his discharge to General, Under Honorable Conditions. As a result of this upgrade to his discharge, the plaintiff claims that he is now entitled to disability retirement for his service-related post-traumatic stress disorder ("PTSD") and traumatic brain injury ("TBI").

On remand from this Court to the Army Board for Correction of Military Records ("ABCMR" or "the Board"), the Board denied his claim. The plaintiff challenges the Board's decision, moving for judgment on the administrative record. He also alleges that the Board violated his fifth amendment due-process rights. The defendant moves to dismiss, arguing that the Court does not have jurisdiction, and that the plaintiff fails to state a claim on which relief can be granted. In the alternative, the defendant cross-moves for judgment on the administrative record.

The Board lacks the statutory authority to grant the plaintiff the relief he seeks. Accordingly, the Court grants the defendant's motion to dismiss on the ground that the plaintiff has failed to state a claim on which relief can be granted. Rule 12(b)(6), Rules of the Court of Federal Claims ("RCFC"). Having dismissed the plaintiff's claim for relief under RCFC 12(b)(6), the Court does not have jurisdiction over the plaintiff's due-process claim standing alone. Accordingly, that claim is dismissed under RCFC 12(b)(1) and 12(h)(3). The parties' cross-motions for judgment on the administrative record are denied as moot.

## I.   BACKGROUND

### A.   Facts[1]

The plaintiff enlisted in the U.S. Army in 2002. (ECF 1, Pl.'s Compl. ¶ 17.) In 2004, during a deployment to Iraq, he fell out of a 30-foot guard tower. (*Id.* ¶ 25.) Another soldier found him, unconscious and bleeding from a head wound, at the base of the tower. (*Id.* ¶ 26.) The plaintiff received first aid from that soldier and stitches at the local aid station. (*Id.* ¶¶ 26-27.)

After returning from Iraq, the plaintiff sought help for symptoms of mental distress, anxiety, disrupted sleep, and panic attacks from his chain of command and from the Fort Hood Mental Health Clinic. (*Id.* ¶¶ 31-32, 36-38.) The plaintiff's chain of command referred him to an Army chaplain. (*Id.* ¶¶ 33-34.) An intake specialist at the Fort Hood Mental Health Clinic documented his symptoms and diagnosed him with an adjustment disorder. (*Id.* ¶ 39.)

In 2004, shortly after his visit to the Fort Hood Mental Health Clinic, the plaintiff learned that he was scheduled to deploy to Iraq again. (*Id.* ¶ 40.) He informed his chain-of-command that he was not mentally prepared to return to Iraq. (*Id.*) The plaintiff ultimately went absent without leave ("AWOL") for six months. (*Id.* ¶ 42.) In 2006, he voluntarily returned to Fort Hood. (*Id.* ¶ 43.) He pleaded guilty to a charge of desertion in a court-martial proceeding and was separated from the Army with a Bad Conduct Discharge. (*Id.* ¶¶ 46-47.)

The plaintiff subsequently received post-service assessments of his condition. In 2012, the plaintiff sought treatment from a clinical psychologist, who diagnosed him with PTSD stemming from his combat service in Iraq. (*Id.* ¶ 52.) In 2014, the plaintiff was evaluated by a psychiatrist, who diagnosed him with service-connected PTSD. (*Id.* ¶ 54.)

---

[1] Because the Court grants the defendant's motion to dismiss under RCFC 12(b)(6), the facts as alleged in the complaint (ECF 1) are assumed to be true. This recitation of the facts does not therefore constitute findings of fact; rather, the Court provides a recitation of the facts as alleged by the plaintiff. For additional context, the Court also refers to facts derived from the administrative record in the case. These facts are included only to add context and to provide a more complete background; the Court does not rely on any factual claim aside from those contained in the plaintiff's complaint in deciding the defendant's motion to dismiss.

In 2014, the U.S. Department of Veterans Affairs ("VA") concluded that the plaintiff was eligible for VA benefits for service-connected PTSD, TBI, depression, headaches, back pain, tinnitus, a painful scar, and ulcers. (*Id.* ¶ 57.) In 2015, a neurologist found that the plaintiff had suffered a moderate TBI when he fell from the guard tower in 2004. (*Id.* ¶ 55.) In 2016, the plaintiff received a 100% service-connected disability rating from the VA. (*Id.* ¶ 56.) In the same year, an Army Review Boards Agency psychiatrist assessed the plaintiff and issued an advisory opinion. (AR 116-18.[2]) She concluded that "there is sufficient evidence to state that the [plaintiff's] PTSD is mitigating for the offenses which led to his discharge from the Army." (*Id.* at 118.)

### B.      Procedural history

After he received his PTSD diagnoses, the plaintiff sought formal review of his service history and post-discharge benefits. In 2014, the Army Discharge Review Board ("ADRB") upgraded the characterization of the plaintiff's discharge from Bad Conduct to General, Under Honorable Conditions. (Pl.'s Compl. ¶ 58.) The ADRB concluded that if the plaintiff would have had a PTSD diagnosis and an indication of TBI at the time of his court-martial, they would have been mitigating factors at his trial. (*Id.*)

In 2015, having secured the upgrade in his discharge, the plaintiff applied to the ABCMR for retroactive medical retirement. (*Id.* ¶ 59.) He alleged that he had had a permanent disability for PTSD, TBI, depression, and anxiety incurred during his service. He argued that the disability caused him to be unfit for service prior to his absence without leave, his court-martial, and his discharge. The Board found that "based on the available post-service medical evidence, it could be argued the [plaintiff] met the criteria for referral to the [Physical Disability Evaluation System ("PDES")] prior to going AWOL." (AR 115.) The Board, however, denied the plaintiff's request on the ground that it "is not empowered to set aside a conviction" under 10 U.S.C. § 1552. (AR 115; *see also* Pl.'s Compl. ¶ 61.)

After reviewing the Board's decision, Deputy Assistant Secretary of the Army Francine Blackmon found that "there [wa]s sufficient evidence to grant additional relief." (AR 11-12; *see also* Pl.'s Compl. ¶ 63.) Secretary Blackmon directed the Office of the Surgeon General "to determine if [the plaintiff] should have been retired or discharged by reason of physical disability through the Integrated Disability Evaluation System [("IDES")]." (AR 11; *see also* Pl.'s Compl. ¶ 63.)

Two Army physicians conducted an evaluation of the plaintiff as part of a Medical Evaluation Board ("MEB") to determine "whether PDES processing was warranted at the time

---

[2] Citations to the Administrative Record submitted by the defendant (ECF 27, supplemented at ECF 44, ECF 49, and ECF 67) are denoted "AR" and followed by the page number denoted within the Administrative Record. As noted in footnote 1, this information is provided only for additional context and supplements the factual allegations in the complaint, but the Court does not rely on these facts in ruling on the motion to dismiss.

of separation." (AR 60; *see also* Pl.'s Compl. ¶¶ 67-71.) They concluded in their narrative summary that the plaintiff failed to meet medical-retention standards in 2003 because of his PTSD, generalized anxiety disorder, and major depressive disorder, and in 2004 because of his TBI. (Pl.'s Compl. ¶¶ 69-70; AR 62-65.) They found it "unlikely that any further interventions for these conditions would have returned the service member to duties consistent with their [*sic*] rank and [Military Occupational Specialty]." (AR 61; *see also* Pl.'s Compl. ¶ 70.)

Following the MEB's evaluation, Dr. Eric L. Doane issued a medical advisory opinion, reviewing the plaintiff's medical records for the ABCMR. (Pl.'s Compl. ¶ 84.) He found that at the time of the plaintiff's separation, there were no indications of disabling PTSD and no symptoms of TBI. (AR 68.) Dr. Doane concluded that the plaintiff was not in need of disability processing at the time of his separation. (*Id.* at 70.) The ABCMR adopted Dr. Doane's opinion in full as its sole basis for denying the plaintiff's claim. (Pl.'s Compl. ¶ 99; *see also* AR 71.)

In 2018, the plaintiff filed a complaint in this court. (ECF 1.) He alleged that the ABCMR's denial of his claim was arbitrary and capricious, in bad faith, unsupported by substantial evidence, and a violation of the due process clause of the fifth amendment. After briefing and oral argument, the Court (1) held that it had jurisdiction over the plaintiff's claim for medical retirement; (2) vacated the ABCMR's decision to deny the plaintiff's claim as contrary to law because the Board had "relied on a medical opinion that failed to consider medical evidence as required by 10 U.S.C. § 1552(h)(2)(B)"; (3) remanded to the Board to "obtain a further medical opinion that considers the medical evidence as required by law and thereafter resolve plaintiff's claim"; and (4) dismissed the remainder of the complaint for lack of jurisdiction. (ECF 57.)

In 2020, the Board, on remand, again denied the plaintiff's request for disability retirement. (AR 2369.) Pursuant to the remand order, the ABCMR obtained a medical advisory opinion from the Office of the Surgeon General. (*Id.* at 2432.) Dr. Denise M. Richardson issued an advisory opinion, which concluded that "there is no evidence to support the need for disability processing" because there is "a dearth of medical records available during [the plaintiff's] time in service." (*Id.*) The Board found that relief was not warranted based on a review of the 2016 Army Review Boards Agency psychiatrist's advisory opinion, the 2018 and 2020 reviews conducted by the Office of the Surgeon General physicians (Dr. Doane and Dr. Richardson), and the narrative summary of the 2018 MEB. The Board found that the evidence in favor of the plaintiff's claim was "outweighed by the other evidence of record addressing the state of disabilities in 2008 that indicate the [plaintiff] met medical retention standards prior to separation." (*Id.* at 2408-09.)

The plaintiff challenges the Board's latest decision and moves for judgment on the administrative record. (ECF 68.) The defendant renews its motion to dismiss and, in the alternative, cross-moves for judgment on the administrative record. (ECF 74.) The plaintiff has

responded (ECF 82), and the defendant has replied.  (ECF 83.)  The Court held oral argument on October 13, 2020.[3]

## II.      JURISDICTION

The Tucker Act, 28 U.S.C. § 1491, limits this Court's jurisdiction to causes of action based on money-mandating statutes and regulations.  *Metz v. United States*, 466 F.3d 991, 995-98 (Fed. Cir. 2006).  A statute is money-mandating when it is "reasonably amenable to the reading that it mandates a right of recovery in damages."  *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003).  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  *Freeman v. United States*, 875 F.3d 623, 628 (Fed. Cir. 2017).

### A.      Money-Mandating Source

The plaintiff is not collaterally attacking his court-martial conviction, as the defendant contends, but instead the plaintiff asserts a disability-retirement claim.  The statute governing military retirement for disability, 10 U.S.C. § 1201, is a money-mandating statute because "when the requirements of the statute are met—i.e., when the Secretary determines that a service member is unfit for duty because of a physical disability, and that disability is permanent and stable and is not the result of the member's intentional misconduct or willful neglect—the member is entitled to compensation."  *Fisher v. United States*, 402 F.3d 1167, 1175 (Fed. Cir. 2005).

### B.      Class of Plaintiffs Entitled to Relief

The plaintiff must make "a nonfrivolous assertion that [he] is within the class of plaintiffs entitled to recover under the money-mandating source" but does not need to "make the additional nonfrivolous allegation that [he] is entitled to relief under the relevant money-mandating source."  *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).  The issue is whether the plaintiff in this case made a nonfrivolous assertion that he is within the class of plaintiffs entitled to recover under the disability statute.

The Federal Circuit has found jurisdiction even when it was clear from the face of the plaintiff's complaint that he did not come within the reach of the money-mandating source.  *See In re United States*, 463 F.3d 1328, 1334-35 (Fed. Cir. 2006).  In *In re United States*, the plaintiff asserted a claim for damages under a money-mandating statute.  *Id.* at 1334.  A claim of unlawful discharge would have supported Tucker Act jurisdiction, so the plaintiff claimed that his non-appointment was a form of discharge to bring his claim under the statute.  *Id.*  The Federal Circuit found that this argument had no merit, but it held that the plaintiff had nonetheless established jurisdiction.  *Id.* at 1335.

---

[3] The Court acknowledges the excellent advocacy provided to the plaintiff by his law student representatives from the Yale Law School Veterans Legal Services Clinic.

The plaintiff here has likewise made a nonfrivolous assertion that he is within the class of plaintiffs entitled to recover under the disability statute. The defendant claims that the plaintiff is ineligible for disability retirement under 10 U.S.C. § 1201 because both his court-martial makes him ineligible under Army Regulation 635-40, and 10 U.S.C. § 1552(f) prohibits the Board from correcting his record to provide him disability retirement. The plaintiff asserts that the regulation does not preclude his claim because the clemency he received from the ADRB made him eligible under the regulation. He also argues that 10 U.S.C. § 1552(f) does not apply because his claim does not require the Board to correct a record of court-martial or a "related administrative record[ ]." As a result, the plaintiff argues that he is within the class of plaintiffs entitled to recover under 10 U.S.C. § 1201.

Even if the plaintiff's substantive claim for relief is without merit, it meets the bar set by *In re United States* to bring the plaintiff within the class entitled to relief under the disability statute and thereby satisfies the threshold to establish the Court's jurisdiction to resolve the plaintiff's claim.

Although the plaintiff successfully makes a nonfrivolous claim that he is within the class of plaintiffs entitled to recover under the disability statute, this showing merely meets the threshold for jurisdiction. On the merits, he must show that the Board can grant relief. The Federal Circuit held that "the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted." *Fisher*, 402 F.3d at 1175-76. The plaintiff's losing argument on the merits of his claim in *In re United States* had that consequence. *In re United States*, 463 F.3d at 1335 ("[T]he Court of Federal Claims should have dismissed [the plaintiff's] section 153(a) claim under its Rule 12(b)(6) for failure to state a claim upon which relief could be granted.").

## C.    Timeliness

The plaintiff's claim must be filed within six years after it first accrues. 28 U.S.C. § 2501; *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005). More than six years have passed since 2004, when the plaintiff claims that the Army failed to discharge him on medical grounds. At that time, the Army had not processed the plaintiff for or denied him disability retirement. Instead, the Board was the first to deny the plaintiff's retirement claim in 2018 after the plaintiff's discharge was upgraded.

A service member's failure to request a disability board prior to discharge "can invoke the statute of limitations when the service member has sufficient actual or constructive notice of his disability, and hence, of his entitlement to disability retirement pay, at the time of discharge." *Chambers*, 417 F.3d at 1226. The plaintiff did not request a disability review prior to his discharge, but he did report symptoms related to his later-diagnosed PTSD and TBI.

There is a difference between knowing one's symptoms and knowing one's condition. Despite identifying some symptoms, the plaintiff likely did not know either the extent of his disabilities or his entitlement to disability retirement. In *Colon v. United States*, for example, the plaintiff was "aware that he had trouble sleeping and suffered from anxiety," as was evidenced

by his military records.  71 Fed. Cl. 473, 482 (2006).  Judge Lettow found that there was no evidence that the plaintiff "knew his mental condition was so severely disabling that it would have qualified him for disability retirement . . . ."  *Id.*  The court also considered that "the Army itself did not give any indication that it believed the plaintiff suffered from a mental disability." *Id.  See also Johnson v. United States*, 123 Fed. Cl. 174, 179 (2015).

In this case, the plaintiff likewise was aware of his mental distress, anxiety, and disrupted sleep as documented in his visit to the Fort Hood Mental Health Clinic.  (Pl.'s Compl. ¶ 37; AR 772.)  There is no indication, however, that the plaintiff knew at the time that his conditions may have qualified him for disability retirement.  The Army, as in *Colon*, did not give any indication at the time that it believed the plaintiff was suffering from a mental disability.  The plaintiff therefore did not have "sufficient actual or constructive notice of his disability," and his claim did not accrue at that time for purpose of the statute of limitations.  *See Chambers*, 417 F.3d at 1226.

The first-competent-board rule provides that "a claim for disability retirement pay generally does not accrue until an appropriate military board denies the claim in a final decision[] or refuses to hear the claim."  *Sabree v. United States*, 90 Fed. Cl. 683, 694 (2009) (citing *Chambers*, 417 F.3d at 1224).  The defendant argues that the ABCMR is not an appropriate military board because it is without the statutory or regulatory authority to provide the relief the plaintiff seeks.  The plaintiff responds that he became eligible for retirement benefits when he received clemency, and that upon his clemency he submitted a timely application for relief to the ABCMR, an appropriate military board with the authority to award retirement benefits.  Although the Court ultimately holds that the Board lacks statutory authority to provide relief to the plaintiff, that is a decision that goes to the merits of the claim, not the Board's or the Court's jurisdiction to reach the merits.  The Board was the first military entity to consider and deny the plaintiff's disability-retirement claim.  On that basis, the Court finds that the plaintiff's claim accrued when the Board first denied it in 2018.  The plaintiff's claim is timely.

### D.    Prior Army Decisions

The Court's finding of jurisdiction is consistent with the Army's own actions in this case. The Board originally concluded that it could not set aside the plaintiff's conviction under § 1552, "and since his discharge resulted from his court-martial conviction, he [was] ineligible for processing through the PDES for possible medical retirement."  (AR 115.)  Secretary Blackmon found enough evidence to grant the plaintiff additional relief.  (*Id.* at 11.)  Invoking her authority under § 1552, she directed "that the [plaintiff's] case be referred to the Office of the Surgeon General to determine if he should have been retired or discharged by reason of physical disability through the [IDES]."  (*Id.*)  Following a medical advisory opinion, the Board in 2018 decided on the merits that the plaintiff was not eligible for disability processing.  (*Id.* at 71.)  After the Court remanded the case back to the Board, it again in 2020 decided the case on the merits.  (*See id.* at 2408-09.)  The Board has twice decided the plaintiff's claim on the merits.  It has never interposed a jurisdictional impediment to resolving the plaintiff's claim for disability-retirement benefits.  The Court recognizes the Board's prior determination of its jurisdiction and finds that it further demonstrates the appropriateness of the Court exercising jurisdiction in this case.

In sum, the Court has jurisdiction over the plaintiff's claim for disability retirement because the plaintiff has invoked a money-mandating statute, made a nonfrivolous assertion that he is within the class of plaintiffs entitled to recover under that statute, and filed his claim within six years of being denied relief.

## III.     FAILURE TO STATE A CLAIM

In addition to its jurisdictional challenge to the plaintiff's claim, the defendant moves to dismiss on the ground that the plaintiff fails to state a claim on which relief can be granted.  The defendant argues that the plaintiff's court-martial conviction makes him ineligible for disability retirement.  Specifically, the defendant argues that the plaintiff is not eligible for disability processing under Army Regulation 635-40, and that the Board is without authority under 10 U.S.C. § 1552(f) to correct the plaintiff's DD-214 Form to reflect a disability retirement.[4] The plaintiff disagrees with both these arguments.

### A.     Eligibility for Military Retirement Under the Army Regulation

The parties dispute whether the relevant Army regulation in effect at the time of the plaintiff's discharge precludes the relief the plaintiff seeks.  *See* Army Reg. 635-40, *Physical Evaluation for Retention, Retirement, or Separation* (Feb. 8, 2006).[5]  The Court holds that it does not.

Army Regulation 635-40 provided the eligibility criteria for disability evaluation.  Paragraph 4-1 limited eligibility for soldiers charged with an offense:

> a.  *Uniform Code of Military Justice action*. The case of a Soldier charged with an offense under the Uniform Code of Military Justice [("UCMJ")] or who is under investigation for an offense chargeable under the UCMJ which could result in dismissal or punitive discharge, may not be referred for, or continue, disability processing unless—
> (1) The investigation ends without charges.

---

[4] "The DD Form 214 . . . is the authoritative source of information required for the administration of State and Federal laws applicable to personnel who have been discharged, released, or transferred to a Reserve Component while on active duty."  Department of Defense Instruction 1336.01 ¶ 3(f) (Aug. 20, 2009).  The document "provide[s] an accurate and complete summation of active military personnel service."  *Id.* ¶ 3(a).  Insofar as relevant here, the DD-214 contains a space for noting the narrative reason for a service member's separation from the service and a space for noting the characterization of the service member's service.

[5] Army Regulation 635-40 has changed since the time relevant to this case, but both parties accept the applicability of the version of the regulation in effect at the time of the plaintiff's court-martial.

8

> (2) The officer exercising proper court-martial jurisdiction dismisses the charges.
> (3) The officer exercising proper court-martial jurisdiction refers the charge for trial to a court-martial that cannot adjudge such a sentence.

*Id.* ¶ 4-1 (italicization in original).

Paragraph 4-2 of Army Reg. 635-40 provided that soldiers "may not be referred for, or continue, disability processing if under sentence of dismissal or punitive discharge." *Id.* ¶ 4-2.

First, the parties dispute the reach of paragraph 4-1, but the Court does not read paragraph 4-1 in isolation. *See Analytical Graphics, Inc. v. United States*, 135 Fed. Cl. 378, 407 (2017) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)) ("[T]he court must avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous.").

The defendant interprets paragraph 4-1 to preclude forever any service member charged with an offense under the UCMJ from disability processing. That interpretation, however, creates an inconsistency between paragraph 4-1 and paragraph 4-2. Not only would paragraph 4-2's limitation on service members under punitive discharge have been superfluous, but paragraph 4-2 also allowed a service member to be referred for disability processing if his sentence is suspended. *See* Army Reg. 635-40, ¶ 4-2 ("If the sentence is suspended, the Soldier's case may then be referred for disability processing.").

The plaintiff interprets paragraph 4-1 only to preclude service members undergoing a court-martial from being processed for disability retirement during the court-martial proceedings or the investigation leading to the court-martial. The plaintiff reads paragraph 4-2 to limit disability processing after conviction and sentencing by court-martial.

The plaintiff's interpretation provides consistency between paragraphs 4-1 and 4-2, when read together, and is preferred.

Second, the parties dispute whether the plaintiff remains subject to a punitive discharge. If the plaintiff remains subject to a punitive discharge, he would be disqualified from being processed for disability retirement under paragraph 4-2. The plaintiff argues that paragraph 4-2 does not apply because the characterization of his service was changed on his DD-214 to remove "Bad Conduct" from the Character of Service block. (*Compare* AR 637 *with* AR 638.) The defendant responds that the plaintiff is still under a punitive discharge because he was discharged pursuant to his court-martial conviction, which has not been reversed. The narrative reason for separation on the plaintiff's DD-214 is still denoted as "Court-Martial, Other." The question before the Court is whether the upgrade in the characterization of his discharge removed the plaintiff from under a punitive discharge.

The upgrade in characterization did have such an effect. A Navy regulation enumerates only two types of punitive discharges: bad conduct and dishonorable. 32 C.F.R. § 724.111.

9

While the parties have not pointed the Court to an equivalent Army regulation, the Army describes a punitive discharge in similar terms.  *See, e.g.*, *United States v. Rush*, 51 M.J. 605, 607 (Army Ct. Crim. App. 1999) ("'[Congress] has demonstrated uncommon concern for punishments extending to dishonorable or bad-conduct discharges.'" (quoting *United States v. Johnson*, 31 C.M.R. 226, 231 (C.M.A. 1962)) (modification in original)).

Although the plaintiff was separated by court-martial, the punitive discharge—Bad Conduct Discharge—is no longer reflected in his official record, the DD-214.  The punitive discharge limitation in paragraph 4-2 therefore does not apply to the plaintiff because he is no longer "under" a punitive discharge.

The plaintiff is not currently charged by or undergoing a court-martial and, having received clemency from the ADRB, is no longer subject to a punitive discharge.  Therefore, by its own terms, Army Regulation 635-40, in effect at the time of the plaintiff's discharge, does not preclude the plaintiff from disability-retirement processing.

## B.    ABCMR Statutory Authority

The parties next dispute whether the Board is barred from granting the plaintiff relief due to 10 U.S.C. § 1552(f), which limits the Board's authority to correct records relating to a court-martial.  The Court holds that the Board does not have the authority to correct the plaintiff's DD-214 to provide him disability retirement.

Section 1552 of Title 10 provides the Secretary of a military department the authority to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  When the correction involves "records of courts-martial and related administrative records pertaining to court-martial cases," the authority to correct a record is limited to "(1) correction of a record to reflect actions taken by reviewing authorities" under the UCMJ, or "(2) action on the sentence of a court-martial for purposes of clemency."  *Id.* § 1552(f)(1)-(2).[6]  Because the plaintiff does not ask the Board to make a correction based on actions by reviewing authorities under the UCMJ or

---

[6] Section 1552(f) provides in full the following:

(f) With respect to records of courts-martial and related administrative records pertaining to court-martial cases tried or reviewed under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)), action under subsection (a) may extend only to--

(1) correction of a record to reflect actions taken by reviewing authorities under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)); or

(2) action on the sentence of a court-martial for purposes of clemency.

10 U.S.C. § 1552(f)(1)-(2).

a correction for purposes of clemency, the Board lacks authority to make a correction to the plaintiff's record of courts-martial and related administrative records.

The threshold question is whether the Board would need to correct the plaintiff's DD-214 to award him disability retirement. The plaintiff's "narrative reason for separation" is noted as "Court-Martial, Other" on his DD-214. (AR 637.) His disability-retirement claim necessarily embodies the argument that he should have been medically discharged and separated prior to his court-martial conviction. The plaintiff claims that there is no regulation or statute preventing his records from reflecting both a court-martial conviction and a medical-retirement status, but the defendant argues that the Board would need to correct his DD-214 to reflect that the plaintiff was medically separated instead of separated pursuant to a court-martial conviction. Consistent with the defendant's position, the plaintiff originally asked the Board in 2015 to "correct his DD-214 . . . to remove the reason for his separation (e.g. court-martial conviction)." (Pl.'s Compl. ¶ 59.)

Although Secretary Blackmon subsequently determined that the evidence supported the plaintiff's request for relief, the Board's original decision in 2017 informs this discussion. The Board found that the plaintiff had requested "in effect" a correction of his DD-214 to show that "he was retired due to physical disability." (AR 86.) The Board concluded that because the plaintiff's court-martial made him ineligible for disability processing, there was "no basis to amend [his] DD Form 214 by changing the reason and authority for separation." (*Id.* at 115.) The Board itself therefore has answered the question; it would need to correct the plaintiff's DD-214 in order to grant the relief the plaintiff seeks.

Because the DD-214 would need to be changed in order to grant the plaintiff the relief he seeks, the next question is whether the DD-214 is a "record[ ] of courts-martial" or a "related administrative record[ ]." If it is, the Board's authority to correct the plaintiff's record is limited.

Courts generally interpret terms of a statute by their plain meaning. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020) ("[W]hen the meaning of the statute's terms is plain, our job is at an end."). Courts begin with a "careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019).

Neither party claims that a DD-214 is a "record[ ] of courts-martial" under 10 U.S.C. § 1552(f). Section 801 of Title 10 defines the word "record":

> The term "record", when used in connection with the proceedings
> of a court-martial, means--
> (A) an official written transcript, written summary, or other writing
> relating to the proceedings; or
> (B) an official audiotape, videotape, or similar material from which
> sound, or sound and visual images, depicting the proceedings may
> be reproduced.

11

10 U.S.C.§ 801(14).  Although the DD-214 notes the plaintiff's court-martial, it does not satisfy any of the terms reflected in this statute regarding that proceeding.  Hence, it is not a "record[ ] of courts-martial."

The question comes down to whether the plaintiff's DD-214 is an administrative record "related" to the plaintiff's court-martial that the Board has no authority to change pursuant to the limitation of 10 U.S.C. § 1552(f).  The defendant argues that the DD-214 is encompassed within the phrase "related administrative record[ ]" because the DD-214 notes the plaintiff's court-martial and is used for administrative purposes.  The plaintiff does not dispute that a DD-214 is an administrative record, but argues that his DD-214 is not "related" in any way to his court-martial because every service member has a DD-214, and it is issued by an entity entirely separate from the court-martial authority.  Relying on the statute's purpose of fostering an independent military criminal justice system and protecting the finality of its decisions, the plaintiff concludes that the statute only limits changes to the underlying factual record or alterations to the legal conclusions of a court-martial proceeding.  He defines the phrase "related administrative record[ ]" as meaning "a non-original record that incorporates or reflects the facts or legal conclusions codified in a 'record' of a court-martial proceeding."  (ECF 68 at 33-34.)  As an example, the plaintiff points to a charging document from a court-martial.

The full phrase "related administrative record[ ]" is not defined in Title 10.[7]  A DD-214 is—without question—an administrative document; it is one that all service members have.  The Department of Defense describes it as the "authoritative source of personnel information for administrative purposes."  Department of Defense Instruction 1336.01 ¶ 3(a) (Aug. 20, 2009).  It is more difficult to determine whether the DD-214 is "related" to a court-martial whenever a service member's DD-214 notes the court-martial as a reason for discharge, but there is reason to find that it is related.

Dictionary definitions of the word "related" support a broad reading of the word.  Dictionaries may aid a court in determining a statute's ordinary meaning.  *Gumpenberger v. Wilkie*, 973 F.3d 1379, 1382 (Fed. Cir. 2020).  According to the Oxford English Dictionary, "related" means "[c]onnected or having relation to something else."  *Related, adj. and n.*, *Oxford English Dictionary* (3rd ed. 2009).  Black's Law Dictionary defines "related" as meaning "[c]onnected in some way; having relationship to or with something else."  *Related*, *Black's Law Dictionary* (11th ed. 2019).[8]

A broad reading of the word "related" also gives full effect to the meaning of the statute, especially when read in conjunction with § 801(14).  Courts hesitate to adopt a statutory interpretation that renders another portion of the same law surplusage.  *Maine Cmty. Health*

---

[7] The phrase "related administrative records" in Section 1552 of Title 10 appears to be the only use of the phrase in Title 10.

[8] The other senses of the word provided in both dictionaries are not relevant to this discussion.

*Options v. United States*, 140 S. Ct. 1308, 1323 (2020). The plaintiff would effectively read § 1552(f)'s limitation on "related administrative records" out of the law. We know from § 801(14) what records are directly related to a court-martial.

What would otherwise fall under the rubric of administrative records "related" to a court-martial not captured by § 801(14)? Most obviously, the indictment or other charging document fits the description, and so would the record of sentence. These records, however, appear to be encompassed by the broad category of "other writing relating to the proceeding" already captured by that statute.

For the phrase "related administrative record" to have any meaning, it must incorporate a broad definition of "related" to include any administrative document that is connected or has a relationship with a court-martial but is not part of, or contained within, the official records of the court-martial itself.

This broad definition gives effect both to § 801(14) and § 1552(f) and the records each covers. As so limned, § 1552(f) captures any administrative record that reflects the decision of the court-martial. The plaintiff's DD-214 reflects the decision of the court-martial by noting the court-martial as the reason for his separation. The DD-214 is therefore an administrative record "related" to the plaintiff's court-martial under § 1552(f).

The Court notes that its interpretation is consistent with the purpose of the statute as explained by its drafters.[9] The Report of the Senate Committee on Armed Services on the Military Justice Act of 1983, Pub. L. 98-209, 97 Stat. 1393 (1983), which created the provision, discusses the language of 10 U.S.C. § 1552(f). S. Rep. No. 98-53, at 36-37 (1983). The Committee's report notes that the provision "make[s] it clear" that the boards of correction of military records and the discharge review boards "have no authority to modify, as a matter of law, findings or sentences of courts-martial." *Id.* at 36. The exceptions in the statute left intact the authority for the boards to correct "personnel files" and "collateral records" resulting from review of a conviction pursuant to the UCMJ. *Id.* at 36-37.

The ADRB acted in accordance with this interpretation of the statute. When the ADRB granted the plaintiff clemency, it concluded that "[a] change in the reason for discharge is not authorized under the Federal statute." (AR 641.) "Clemency," it explained, "is an act of leniency that reduces the severity of the punishment imposed." (*Id.* at 646.) It could act only to change the characterization of service and not the reason for the plaintiff's separation from the Army because "[t]he ADRB may not upset the finality of a court-martial conviction." (*Id.*) The ADRB therefore found that it could not change the plaintiff's reason for discharge on his DD-

---

[9] The Court interprets § 1552(f) based on the statute's language and not on its legislative history. The Court references the legislative history to demonstrate that it does not show a "'clearly expressed legislative intention'" contrary to Court's interpretation of the statutory language. *See Analytical Graphics, Inc.*, 135 Fed. Cl. at 408 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987)).

214, even as an act of clemency.  As does the Court, the ADRB—the Army board in charge of reviewing discharges—considers a DD-214 a "related administrative record" subject to § 1552(f)'s limitations.

The effect of the statutory language, as interpreted by the Court and the ADRB and understood by the Senate Committee responsible for the language, is to channel claims for post-conviction relief "into the judicial forums established for such actions by Congress in the UCMJ."  S. Rep. No. 98-53, at 36.

The statute provides two exceptions to the limitation on the ability of corrections and discharge review boards to remove from a DD-214 a record of conviction by court-martial, but neither applies here.  One exception is when the service member receives clemency on the sentence of a court-martial.  The plaintiff is not seeking clemency on his sentence here.  The second exception is when reviewing authorities constituted under the UCMJ revise or overturn a conviction.  The plaintiff never appealed his conviction through the means authorized under the UCMJ, and the time for him to seek such review is long past.

In context, corrections boards and discharge review boards may only correct "personnel files" that reflect a conviction by court-martial when that conviction is overturned on appeal or by other processes provided for in the UCMJ.  Otherwise, they may not do so.  The DD-214 is an administrative record.  The notation on it reflecting a conviction by court-martial leading to a service member's removal from the armed forces is "related" to the determination of the court-martial.

In sum, because the plaintiff's DD-214 is an administrative record "related," under 10 U.S.C. § 1552(f), to his conviction by court-martial and discharge from the Army, the Board is without authority to change the reason for separation due to the court-martial.  Because such a change would be necessary for the Board to grant disability retirement in place of separation due to court-martial, the Board is without the authority to grant the plaintiff the relief he seeks.  As a result, the Court may not grant the plaintiff relief and dismisses the plaintiff's claim for failure to state a claim on which relief can be granted.

## IV.    FIFTH AMENDMENT

The plaintiff argues that the ABCMR's decision violates his right to due process under the fifth amendment to the Constitution for two reasons:  (1) the Board failed to consider competent medical evidence, denying him an opportunity to be heard at a meaningful time and in a meaningful manner; and (2) the Board applied a different presumption to the plaintiff's case than it does to similar cases, denying him the same fair process afforded to others.

The Court's dismissal of the plaintiff's claim for disability retirement for failure to state a claim upon which relief can be granted requires dismissal of the plaintiff's constitutional claim.  This court has jurisdiction to hear due-process claims only in support of money-mandating claims.  *See Holley v. United States*, 124 F.3d 1462, 1467 (Fed. Cir. 1997).  This court "has full authority to consider constitutional issues relevant to an appeal that is properly before it."  *Id.*  The court, however, lacks jurisdiction to hear fifth amendment due-process claims standing

alone. *Wheeler v. United States*, 11 F.3d 156, 159 (Fed. Cir. 1993) (upholding a Court of Federal Claims decision dismissing a plaintiff's due-process claim because it dismissed the plaintiff's other claim for failure to state a claim upon which relief can be granted). In the absence of an applicable money-mandating statute, now lost to the plaintiff, the only recourse for the plaintiff's constitutional claim is federal district court. Accordingly, the plaintiff's fifth amendment claim is dismissed for lack of jurisdiction.

## V.    CONCLUSION

The ABCMR lacks authority to alter the plaintiff's DD-214 to remove the record of the plaintiff's court-martial conviction. The Board may not, therefore, revise the nature of the plaintiff's discharge. To find for the plaintiff, the Board would have to revise the plaintiff's DD-214 to revise the reason for the plaintiff's separation from the Army. This power the Board is denied by law. Accordingly, the plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed under RCFC 12(b)(6).

With the claim under the Military Pay Act dismissed, the Court does not have jurisdiction over the plaintiff's fifth amendment claim, which must be dismissed pursuant to RCFC 12(b)(1) and 12(h)(3). The parties' cross-motions for judgment on the administrative record are denied as moot.

The Court will issue an order in accordance with this opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**