# In the United States Court of Federal Claims

No. 18-1784C
Filed: May 2, 2023
NOT FOR PUBLICATION

---

**ROBERT J. LABONTE, JR.,**

                    *Plaintiff,*

**v.**

**UNITED STATES,**

                    *Defendant.*

---

### MEMORANDUM OPINION AND ORDER

*HERTLING*, **Judge**

The plaintiff, Robert J. LaBonte Jr., served in the United States Army ("Army") from 2002 until his involuntary separation in 2008.  His Army service included a deployment in 2003 to Tikrit, Iraq.  The plaintiff alleges that he developed Post-Traumatic Stress Disorder ("PTSD") and a Traumatic Brain Injury ("TBI") during his deployment.  The plaintiff went absent without leave ("AWOL") in 2005 to avoid a second deployment to Iraq, causing the Army to court-martial and discharge him for bad conduct.  Due to the plaintiff's PTSD and TBI, however, the Army has upgraded the characterization of the plaintiff's service to honorable.  The plaintiff sued the defendant, acting through the Army, to alter his service records to receive retirement benefits for his disabilities.

The Army Board for Correction of Military Records ("ABCMR") has held that the plaintiff is not entitled to a referral to the evaluation boards that would process the plaintiff's disability-retirement claim.  The parties have filed cross-motions for judgment on the administrative record regarding the legal validity of that decision and the relief due to the plaintiff.

Under Army Regulations 635-40 and 40-501, the ABCMR's decision was arbitrary and capricious and contrary to law.  The plaintiff is entitled to a referral to the disability evaluation system.  Although the plaintiff seeks a full award of benefits here, a remand to the ABCMR is more appropriate to allow the Army to calculate what benefits are due to the plaintiff in the first instance.  Accordingly, the cross-motions for judgment on the administrative record are granted in part and denied in part, and the case is remanded to the ABCMR.

## I.      FACTUAL BACKGROUND

### A.      The Plaintiff's Military Service

The plaintiff enlisted in the U.S. Army in 2002, at the age of 18 years old.  (AR 792-93.) He joined the Military Police with the goal of eventually becoming a local police officer.  (*Id.*) After completing training, the plaintiff was deployed to Tikrit, Iraq, in 2003.  (*Id.* at 796.)  The fighting in Tikrit in 2003 was severe.  The plaintiff's duties included providing convoy security as a gunner, guarding enemy prisoners of war, and manning guard towers.  (AR 797.)

The plaintiff asserts that he endured traumatic experiences while in Iraq.  He engaged in several firefights with insurgent groups, and his base was regularly mortared.  The convoy vehicles often ran into improvised explosive devices ("IEDs"), which killed some of the plaintiff's fellow soldiers, including some friends of his.  Insurgent groups frequently strapped IEDs to live and dead dogs; the plaintiff sometimes had to kill live dogs and shoot at dead dogs for his own safety; these actions upset the plaintiff.  While the plaintiff was once protecting a convoy, a man stepped in front of a truck and was killed.  Fearing that the incident was a trap, the leader of the convoy demanded the convoy move on and leave the body.  (*See* AR 797-801.)

Most notably, on one night in February 2004, the plaintiff alleges that he fell from a 30-foot-tall guard tower.  Another soldier found the plaintiff unconscious and lying in a pool of his own blood at the base of the tower.  That soldier had formerly worked as a paramedic and was able to help the plaintiff regain consciousness.  Upon regaining consciousness, the plaintiff did not know where he was or what had happened to cause his injury.  The soldier accompanied the plaintiff to a bathroom to clean up and took a photograph of the plaintiff.  The photograph shows the plaintiff with his head and hands covered in blood.  The plaintiff was taken to a medical-aid station and given stitches and over-the-counter pain medication but no further medical treatment. The plaintiff returned to guard-tower duty the following night.  (AR 800, 817-818, 2465.)

The incident was poorly documented, and the plaintiff's memories of that night are "hazy."  (AR 800.)  The Army has no record of the plaintiff's fall or the medical treatment the plaintiff received that night.  The main evidentiary record consists of the plaintiff's affidavit, an affidavit of the soldier who found the plaintiff, and the photograph.

The plaintiff's demeanor shifted after his fall, and he started to believe that he would not survive his tour in Iraq.  He experienced nightmares, panic attacks, mood swings, paranoia, and bouts of depression.  His communications with family became erratic and infrequent.  (AR 801-02.)

After returning from his deployment, the plaintiff sought help for his mental-health problems from his chain of command but was told "to toughen up."  (AR 804.)  One day, the plaintiff intentionally missed morning formation and was placed on barracks restriction, but he received no treatment or counseling for his increasing mental distress.  (*Id.*)

In June 2004, after returning from Iraq, the plaintiff sought treatment at the Fort Hood Mental Health Clinic.  On the intake form, the plaintiff wrote: "Military causing problems back

home for me, I can't take being here or in the military any longer." (AR 770.) When asked what results he desired from the clinic, the plaintiff wrote: "[m]y chain of command to re[a]lize I need to be chaptered out of the army asap." (*Id.*) The plaintiff checked boxes indicating that he was experiencing poor and disrupted sleep, decreased appetite, excessive anxiety, rapid breathing, rapid heartbeat, crying a lot, difficulty controlling his worry, racing thoughts, and decreased ability to have fun. (AR 772.) He also reported feeling sadness, rage, anxiety, and hopelessness. (*Id.*) The plaintiff was diagnosed with an adjustment disorder, but the record is devoid of any treatment he received. There is no indication that a psychologist or psychiatrist saw the plaintiff. (*See* AR 117.)

Shortly after that visit to the mental health clinic, the plaintiff learned that his unit would redeploy to Iraq. In February 2005, the plaintiff completed a pre-deployment health assessment and checked boxes describing his health as excellent and indicating that he had not sought counseling or care for his mental health in the past year. (AR 1424.) This latter indication was incorrect. The plaintiff has since explained to the ABCMR that he had told his chain of command that he was mentally unfit to return to Iraq, but his concerns had gone unaddressed. The plaintiff stated to the ABCMR that he "knew that if [he] returned to Iraq [he] would die, so [he] sat in the terminal and watched as [his] plane flew away." (AR 805-06.) He was AWOL from approximately November 16, 2005, until June 5, 2006. (AR 1176.)

The plaintiff was court-martialed for desertion. The plaintiff pleaded guilty and was sentenced to forfeit $849 per month for four months, to be confined for four months, and to be discharged from the Army with a bad-conduct discharge. (*Id.*) The plaintiff was confined for 100 days and discharged from the Army on March 13, 2008. (AR 1597.)

## B.    Subsequent Medical Diagnoses

For several years following his discharge, the plaintiff was "reluctant to discuss" his health symptoms because he believed they "reflected personal weakness." (AR 1363.) In 2012, the plaintiff sought treatment from a private psychologist, Mark Hall, Ph.D. Dr. Hall diagnosed the plaintiff with PTSD. Dr. Hall also believed the plaintiff had "sustained some degree of closed-head injury when he fell from the guard tower, the evidence being the head wound, the loss of consciousness, amnesia, disorientation at the time, and perhaps also the ringing of the ears." (*Id.*)

In 2014, the plaintiff was evaluated by a psychiatrist, Bandy Lee, M.D. Dr. Lee reported that after the plaintiff was injured, he experienced "debilitating cluster headaches (a severe form of migraine) twice weekly and constant tinnitus (ringing in the ears)." (AR 765.) Dr. Lee also diagnosed the plaintiff with Major Depressive Disorder and PTSD, noting that "his actions of AWOL are entirely consistent with PTSD and to be expected." (AR 767-68.) Dr. Lee posited that the plaintiff "has a debilitating psychiatric illness that, at the time of his actions leading to his court martial and [bad-conduct discharge], likely did not allow him full control of his own behavior. Rather than receiving treatment, he received punishments that likely worsened his condition, which remains severe to this day." (AR 768.)

In 2015, the plaintiff was evaluated by a neurologist, Sanjay P. Rathi, M.D.  After evaluating the plaintiff's symptoms and an MRI of the plaintiff's brain, Dr. Rathi concluded:

> [T]he patient clearly suffered severe concussive injury . . . and had headaches immediately following his head trauma when he first regained consciousness and has suffered with headaches ever since. I believe that his headaches are causally related to the original traumatic brain injury and find that the patient suffered with what today would be defined as concussive head injury with attendant sequelae consistent with "post concussive" changes in behavior and personality, further complicating his development of depression, anxiety, insomnia, and also potentially contributing to the cognitive and behavioral difficulties that he has had.

(AR 187.)

## C.    Application to Correct Military Records

In 2014, the plaintiff applied to the Army Discharge Review Board to upgrade his discharge status to General, Under Honorable Conditions.  During the Army's review of the plaintiff's discharge status, the plaintiff's medical history was evaluated by an Army psychiatrist, Cynthia M. Shappell, M.D.  (AR 116-18.)  Dr. Shappell noted that the plaintiff's military records were "void of documentation of PTSD symptoms," but that the plaintiff was diagnosed with an adjustment disorder by an Army Behavioral Health Specialist in June 2004.  (AR 117.)  Dr. Shappell noted that "based on the symptoms documented in [the June 2004 intake form], it is clear that the applicant was suffering from a diagnosis more severe than Adjustment Disorder, most likely PTSD."  (*Id.*)  Dr. Shappell noted: "PTSD is associated with avoidant behaviors such as going AWOL."  (AR 118.)  Dr. Shappell recommended that the plaintiff be referred to DES processing for medical disability and retirement.  (*Id.*)

The Discharge Review Board voted to grant the plaintiff clemency by upgrading his characterization of service to general, under honorable conditions.  (AR 641.)  The Discharge Review Board noted that there was "clear evidence of PTSD."  (AR 647.)

The plaintiff also applied for benefits from the Department of Veterans Affairs ("VA"). A VA psychologist, Brian Crandall, Ph.D, found that the plaintiff "was experiencing PTSD, Depression, Anxiety, and mTBI symptoms post his deployment from Iraq in 2004."[1]  (AR 1957.) The plaintiff "continues to severely struggle with his symptoms as evident by mood variability, poor sleep and appetite, low motivation and energy, poor concentration and focus, and frequent headaches, ringing in his ears, and periodic vomiting."  (*Id.*)  Dr. Crandall noted that those

---

[1] The word "mTBI" likely stands for "mild Traumatic Brain Injury."  *See* C. Lefevre-Dognin et al., *Definition and epidemiology of mild traumatic brain injury*, PubMed (May 6, 2020), https://pubmed.ncbi.nlm.nih.gov/32387427/ (last visited Apr. 27, 2023).

"symptoms inter[fere]d with his sleep, appetite, concentration, focus, energy, and ability to perform his duties." (*Id.*)  The VA currently rates the plaintiff's PTSD as 70-percent disabling and the plaintiff's headaches as 50-percent disabling; the plaintiff is therefore rated as 100-percent disabled.  (AR 123.)

Upon review of the Army Discharge Review Board's findings, Deputy Assistant Secretary of the Army Francine C. Blackmon directed the plaintiff's case to the Office of the Surgeon General "to determine if [the plaintiff] should have been retired or discharged by reason of physical disability through the Integrated Disability Evaluation System (IDES)."[2]  (AR 11.) Deputy Assistant Secretary Blackmon noted that "[s]hould a determination be made that the applicant should have been separated under the IDES, these proceedings will serve as the authority to void his administrative separation and to issue him the appropriate separation retroactive to his original separation date, with entitlement to all back pay and allowances and/or retired pay, less any entitlements already received." (*Id.*)

Before forwarding the plaintiff's case to the Office of the Surgeon General, an Army Physical Evaluation Board Liaison Officer ("PEBLO") submitted the plaintiff's case directly to a Medical Evaluation Board ("MEB"), which is the first step in Disability Evaluation System ("DES") processing.  (AR 1771-72.)

The MEB drafted a Narrative Summary ("NARSUM") indicating that the plaintiff had PTSD, Generalized Anxiety Disorder, Major Depressive Disorder (which was recurrent and moderate), and TBI (with residuals of migraine headache and cognitive impairment).  (AR 1777.)  Each of those conditions independently caused the plaintiff to fail to meet retention standards.  (AR 1778-82.)

Following the MEB's determination as reflected in the NARSUM, the PEBLO forwarded the plaintiff's case to a senior MEB official, Eric Doane, D.O., for approval.  Dr. Doane refused to approve the MEB's determination.  (AR 1793.)  Dr. Doane noted that the "Army Board of Military Records was sent to your IDES to determine whether PDES WAS WARRENTED [*sic*] at the time of separation.  Clearly it was NOT warranted." (*Id.* (capitalization in original).))  Dr. Doane noted that at the time the plaintiff separated from the Army, he was "on no profiles" and "on no medications." (*Id.*)  Dr. Doane posited: "He cannot come back years later after receiving VA ratings and now demand that he should have been put through the MEB." (*Id.*)  The PEBLO forwarded to Dr. Doane the memorandum from Deputy Assistant Secretary Blackmon, but Dr. Doane continued to express skepticism that DES processing was warranted.  (AR 1905-06.)  Dr. Doane prepared a response to the ABCMR.  (AR 2040-41.)

---

[2] The plaintiff has explained that IDES exists for servicemembers who are currently separating but that the plaintiff is entitled to processing under the Legacy Disability Evaluation System ("LDES").  (ECF 104 at 6-7.)  Accordingly, this opinion analyzes the plaintiff's right to referral to the MEB under the LDES, elsewhere simply referred to as the DES.

In his response to the ABCMR, Dr. Doane recommended that the ABCMR determine that the plaintiff was not entitled to disability processing at the time of separation.  (AR 77-79.) Dr. Doane explained that the plaintiff's medical records reflected that the plaintiff had been in good health at the time he separated.  Dr. Doane attributed the plaintiff's visit to the Fort Hood Mental Health Clinic to "problems with the military and his girlfriend back home who was pregnant."  (AR 77.)  Dr. Doane noted that there was no documentation of the plaintiff's fall from the guard tower and that the plaintiff's memories of the fall were hazy.  (AR 78.)  Dr. Doane thought it "peculiar" that the injury from the fall was not documented because of the existence of a medical-treatment facility at that base.  (*Id.*)  Dr. Doane noted that the plaintiff had a facial scar when he enlisted and thought that the plaintiff's TBI symptoms should have improved, not worsened, with time.  Army regulations required multiple medical evaluations of the plaintiff upon separation, and even though he could identify only one possible record of such an examination, Dr. Doane conjectured that the plaintiff must have been repeatedly examined.

Following its receipt of Dr. Doan's opinion, the Army Review Board Agency sent the plaintiff a letter explaining that the plaintiff was not entitled to disability processing at the time of separation from active duty.  (AR 73.)

## II.    PROCEDURAL HISTORY

The plaintiff filed suit on November 20, 2018, seeking back pay, retirement pay, and disability benefits and allowances.  (ECF 1.)  The defendant filed a motion to dismiss and motion for judgment on the administrative record.  (ECF 24.)  On June 21, 2019, the case was transferred to the undersigned.  (ECF 30.)  The plaintiff filed a cross-motion for judgment on the administrative record and a response to the defendant's motion.  (ECF 52.)

After oral argument on the motions, all claims except the one for medical retirement were dismissed for lack of jurisdiction under RCFC 12(b)(1) due to the plaintiff's conviction by court martial.  The claim that the plaintiff should have been considered for medical retirement was found to be within the Court's jurisdiction and considered.  On that claim, the Court determined that "the ABCMR [had] relied on a medical opinion that failed to consider medical evidence as required by 10 U.S.C. § 1552(h)(2)(B)."  (ECF 57.)  Accordingly, the ABCMR's "decision to reject the plaintiff's claim for medical retirement [was] contrary to law."  (*Id.*)  The case was remanded to the ABCMR with instructions to "obtain a further medical opinion that considers the medical evidence as required by law and thereafter resolve the plaintiff's claim."  (*Id.*)

The ABCMR completed the remand in 2020.  The ABCMR determined that the plaintiff "has not demonstrated by a preponderance of evidence an error or injustice warranting the requested relief, specifically, that the record be corrected to reflect a disability retirement with a disability rating of at least 80 percent."  (AR 2408.)  The ABCMR noted that the plaintiff had been diagnosed with PTSD and TBI related to his service but found that the plaintiff was not eligible for disability processing because of his bad-conduct discharge.

The ABCMR considered the NARSUM and believed that it was "based on the state of [the plaintiff's] disabilities in 2018 and not prior to service separation in 2008."  (AR 2409.)  The ABCMR acknowledged "the diagnosed PTSD and TBI that existed prior to service separation"

but believed "a preponderance of the evidence reflected that the applicant met medical retention standards prior to service separation and referral into DES or disability separation/retirement was not warranted." (*Id.*)  The ABCMR noted that it had to give the plaintiff's arguments "liberal consideration and clemency," but reasoned that the PTSD and TBI should be used only as evidence of mitigation of the characterization of the plaintiff's service and not as related to disability benefits.  The plaintiff's application was denied.  (AR 2410.)

The parties filed a second round of cross-motions for judgment on the administrative record.  (*See* ECF 68; ECF 74; ECF 82; ECF 83.)  The defendant also moved to dismiss the plaintiff's claim for lack of jurisdiction under RCFC 12(b)(1) and pursuant to RCFC 12(b)(6).

The Court held that subject-matter jurisdiction over the plaintiff's claim existed.  *LaBonte v. United States*, 150 Fed. Cl. 552, 557-59 (2020).  Additionally, Army Regulation 635-40 did not preclude the plaintiff from disability-retirement processing.  *Id.* at 560-61.  Under 10 U.S.C. § 1552(f), however, the ABCMR lacked statutory authority to change the reason of the plaintiff's separation.  *Id.* at 561-64.  The plaintiff's claim was thus dismissed.

The plaintiff appealed, and the Federal Circuit reversed the dismissal.  The Federal Circuit held that § 1552(f) does not prohibit the correction of the plaintiff's records if he is entitled to disability retirement benefits for PTSD and TBI.  *LaBonte v. United States*, 43 F.4th 1357, 1374 (Fed. Cir. 2022).

The case was remanded, and the parties have filed a third round of cross-motions for judgment on the administrative record.  The plaintiff filed his motion for judgment on the administrative record on February 15, 2023.  (ECF 100.)  The defendant filed its cross-motion and response to the plaintiff's motion for judgment on the administrative record on March 17, 2023.  (ECF 103.)  The plaintiff filed a response brief (ECF 104) on April 11, 2023, and the defendant filed its reply brief (ECF 106) on April 25, 2023.  Oral argument was held on May 2, 2023.

## III.   JURISDICTION

Subject-matter jurisdiction over the plaintiff's claim exists.  *LaBonte*, 150 Fed. Cl. at 559.  That holding was not disturbed on appeal.  *LaBonte*, 43 F.4th at 1363.

## IV.   STANDARD OF REVIEW

The parties have cross-moved for judgment on the administrative record under RCFC 52.1.  In consideration of such motions, the court's review is limited to the administrative record, and the court makes findings of fact as if it were conducting a trial on a paper record.  *See Young v. United States*, 497 F. App'x 53, 58-59 (Fed. Cir. 2012) (per curiam), *cert. denied*, 569 U.S. 964 (2013).

A court must uphold a decision of a military corrections board unless it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Sharpe v. United States*, 935 F.3d 1352, 1358 (Fed. Cir. 2019) (quoting 5 U.S.C. § 706(2)(A)).  A court's scope of review is narrowly confined to "'whether the agency examined the relevant data and articulated a

satisfactory explanation for its decision, including a rational connection between the facts found and the choice made."" *Sharpe*, 935 F.3d at 1358 (quoting *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019)) (cleaned up).  A court cannot substitute its judgment for that of the agency but can determine whether the agency decision was "'within the bounds of reasoned decisionmaking.'" *Sharpe*, 935 F.3d at 1358 (quoting *Dep't of Com.*, 139 S. Ct. at 2569).

## V.    DISCUSSION

The issue raised by the plaintiff's claim is whether the plaintiff was medically fit for continued service at the time of his discharge.  The plaintiff argues that the ABCMR's decision is arbitrary and capricious because the plaintiff did not meet medical-retention standards and was unfit for military service in 2008, the ABCMR mischaracterized the NARSUM, and the ABCMR relied on Dr. Doane's analysis, which was legally deficient.

The defendant argues that there is no record that the plaintiff had a medically disqualifying condition at the time he was discharged, that the NARSUM was created without proper authority, and that the ABCMR's decision was reasonable.

Crucial to the parties' arguments is whether the plaintiff was entitled to a referral to DES, which includes evaluation by a MEB and a Physical Evaluation Board ("PEB").  If the plaintiff was entitled to such a referral, it remains to be determined whether the plaintiff is entitled to retirement-disability benefits.

### A.    Entitlement to MEB Evaluation

The parties agree that Army Regulations 635-40 and 40-501 largely govern a former servicemember's entitlement to referral to DES processing.[3]  (*See* ECF 100 at 13-16, 20; ECF 103 at 13-14.)

#### 1.    Army Regulation 635-40

At the time the plaintiff was separated, Army Regulation 635-40 provided a low bar to referral to a MEB.  The regulation provided that a commander should refer a soldier to a medical treatment facility for evaluation "when a *question* arises as to the Soldier's ability to perform the duties of his or her office, grade, rank, or rating because of physical disability."  Army Reg. 635-40, *Physical Evaluation for Retention, Retirement, or Separation*, ¶ 4-6 (Mar. 8, 2006) (emphasis added).  If it "*appears* the Soldier is not medically qualified to perform duty," the medical treatment facility commander "will refer the Soldier to a MEB." *Id.* at ¶ 4-9 (emphasis added).

---

[3] The plaintiff also argues that 10 U.S.C. § 1201 entitles him to relief.  Section 1201 of Title 10 of the U.S. Code provides that a servicemember may be retired as "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay," but that determination requires input from a MEB and PEB under Army regulations.  Accordingly, § 1201 applies only after a referral to DES has already been made.

When the plaintiff approached his chain of command regarding his fitness to continue serving, he created a "question" as to his ability to perform the duties of his office that required his commanders to refer him to a medical treatment facility. *Id.* at ¶ 4-6. They failed to do so.

The plaintiff's 2004 intake form at the Fort Hood Mental Health Clinic indicates that the plaintiff did not think himself mentally qualified to perform his duties. The plaintiff reported on the form that he wanted his "chain of command to re[a]lize [he] need[ed] to be chaptered out of the army asap." (AR 770.) The plaintiff wrote: "I can't take being here or in the military any longer." (*Id.*) The plaintiff's completion of the form gave the appearance that that the plaintiff was not medically qualified to perform his duty. The medical treatment facility should have referred the plaintiff to a MEB. Army Reg. 635-40, ¶ 4-9.

## 2. Army Regulation 40-501

At the time the plaintiff was separated, Army Regulation 40-501 provided: "Soldiers with conditions listed in this chapter who do not meet the required medical standards will be evaluated by a MEB as defined in AR 40–400 and will be referred to a PEB as defined in AR 635–40." Army Reg. 40-501, *Standards of Medical Fitness*, ¶ 3-3 (Dec. 14, 2007). The list of conditions describes defects that "may render a Soldier unfit for further military service and which fall below the standards required" to serve. *Id.*, at ¶ 3-1. Listed conditions render a soldier unfit to serve if they "[s]ignificantly limit or interfere with the Soldier's performance of their duties," "compromise or aggravate the Soldier's health or well-being if they were to remain in the military Service," "compromise the health or well-being of other Soldiers," or "prejudice the best interests of the Government if the individual were to remain in the military Service." *Id.*

"Possession of one or more of the conditions listed in this chapter does not mean automatic retirement or separation from the Service." *Id.*, at ¶ 3-4. Rather, soldiers with conditions listed in the chapter must be referred to a MEB. *Id.*

Conditions warranting referral to the MEB included migraines, tension, or cluster headaches, when manifested by frequent incapacitating attacks. *Id.* at ¶ 3-30(g). TBI also required referral to a MEB "when after adequate treatment there remains residual symptoms and impairments such as persistent severe headaches, . . . [or] alteration of consciousness, speech, personality, or mental function of such a degree as to significantly interfere with performance of duty." *Id.* at ¶ 3-30(j). Mood disorders were also a cause for referral when "[p]ersistence or recurrence of symptoms result[s] in interference with effective military performance." *Id.* at ¶ 3-32(c). Additionally, regarding adjustment disorders, "[s]ituational maladjustments due to acute or chronic situational stress do not render an individual unfit because of physical disability, but may be the basis for administrative separation if recurrent and causing interference with military duty." *Id.* at ¶ 3-36.

The administrative record supports referral of the plaintiff to a MEB for each of those conditions. Dr. Lee, Dr. Rathi, and Dr. Crandall all noted the plaintiff's severe cluster headaches or migraines, which interfered with the plaintiff's daily activities and currently entitle him to a 50-percent disability rating from the VA. (AR 123, 187, 765, 1957.) The record indicates that the plaintiff began experiencing severe, persistent headaches immediately after his fall from the

guard tower.  (AR 186, 765.)  The plaintiff's symptoms would have required referral to a MEB. Army Reg. 40-501, at ¶ 3-30(g).

Further, the record reflects that the plaintiff suffered from TBI with residual symptoms of persistent severe headaches and the alteration of personality and mental function.  Dr. Rathi posited that the plaintiff's "headaches are causally related to the original traumatic brain injury" the plaintiff incurred while deployed and that the plaintiff experienced "'post concussive' changes in behavior and personality, further complicating his development of depression, anxiety, insomnia, and also potentially contributing to the cognitive and behavioral difficulties that he has had."  (AR 187.)  This diagnosis also required referral to the MEB.  Army Reg. 40-501, at ¶ 3-30(j).

Ample evidence in the record reflects that the plaintiff suffered from PTSD at the time of his separation.  No reasonable factfinder could find to the contrary, and the ABCMR "acknowledg[ed] the diagnosed PTSD and TBI that existed prior to service separation."  (AR 2409.)  Dr. Lee and Dr. Shappell both linked the plaintiff's act of going AWOL in 2005 with PTSD.  (AR 118, 766-67.)  Their findings support a characterization of the plaintiff's PTSD as interfering with effective military performance.  Army Reg. 40-501, at ¶ 3-32(c).  Dr. Hall also found that the plaintiff "is suffering from Post-Traumatic Stress Disorder stemming from his experience in the Iraq War," and that his bad-conduct discharge was a direct result of his mental distress.  (AR 1362-63.)  In sum, the record reflects that the plaintiff's PTSD predated his discharge from the Army and contributed to his decision to go AWOL.

In *Doyon v. United States*, the Federal Circuit instructed military corrections boards that "liberal consideration" must be given to a veteran's application for discharge relief when the veteran asserts claims based on mental-health conditions, including PTSD.  58 F.4th 1235, 1243 (Fed. Cir. 2023).  "'It is unreasonable to expect the same level of proof for injustices committed years ago when' PTSD was 'far less understood than it is today.'"  *Id.* (quoting the parties' joint appendix) (cleaned up).  Although *Doyon* related to a correction of the reason for the plaintiff's discharge and not to a claim for a disability retirement, the Federal Circuit reasoned that the same "liberal consideration" standard would need to be applied to the retroactive determination of whether the plaintiff was entitled to retirement due to disability.  *Id.* at 1247-48 (holding that the "liberal consideration" standard applies to all evaluations of "whether PTSD 'potentially contributed to the circumstances resulting in the discharge or dismissal'" under 10 U.S.C. § 1552(h)(2)(B)).

Although the ABCMR purported to provide a "liberal consideration" to the plaintiff's claim in its most recent decision, it failed to apply the appropriate standard.  (AR 2408.)  The ABCMR simply asserted that the plaintiff had not demonstrated preponderant evidence of entitlement to DES referral despite the plaintiff's diagnosis of service-related PTSD by at least five different medical professionals, including one from the Army and one from the VA.  All those medical professionals found that the plaintiff's illnesses and injuries predated and contributed to the circumstances of the plaintiff's discharge.  The ABCMR did not wrestle with or seek to explain why these medical opinions should not be followed.  *Cf. Beckham v. United States*, 183 Ct. Cl. 628, 622-23 (1968) ("A naked conclusion and mere recitation that the opinion

is based upon all of the evidence without an analysis of the evidence in writing (as here), is inimical to a rational system of administrative determination and ultimately inadequate.")

The lack of contemporaneous documentation of the plaintiff's PTSD and TBI is not dispositive. The absence of such documentation may simply reflect the realities of an active war zone in which the Army had priorities other than documenting the plaintiff's non-combat injury, which may not have seemed permanent or severe at the time. The plaintiff, however, documented his initial injury and its subsequent effects through the statement of a witness, the soldier who found him, and a photograph taken at the time. This evidence is buttressed by diagnoses from multiple medical professionals. That much of this evidence is derived years after the injury and its follow-on mental and physical effects does not negate its relevance. The plaintiff's testimony that he incurred PTSD and TBI while in service may be sufficient alone to justify relief under Army guidance.[4] Additionally, medical opinions regarding a veteran's PTSD or TBI, even those by civilian doctors post-dating a veteran's service, require liberal consideration by the ABCMR.[5] Even if the plaintiff's statement and the doctors' diagnoses were insufficient, the plaintiff has provided the statement of the soldier who found the plaintiff unconscious and the photograph apparently taken contemporaneously with the plaintiff's fall and consequent head injury.

The cumulative evidence in this case, including the witness's statement and the photograph, requires more from the Army. Although the plaintiff's pre-deployment health assessment suggesting the plaintiff was healthy in 2005 may be probative, the ABCMR must assess and consider all evidence in the case.[6] If the ABCMR denies the plaintiff relief, the ABCMR must at a minimum address the evidence that the medical experts relate directly to the plaintiff's time in service and explain why the judgments of those experts are not worthy of

---

[4] "The veteran's testimony alone, oral or written, may establish the existence of a condition or experience, that the condition or experience existed during or was aggravated by military service, and that the condition or experience excuses or mitigates the discharge." Anthony M. Kurta, Office of the Under Secretary of Defense, "Memorandum for Secretaries of the Military Departments" (Aug. 25, 2017) (hereafter "Kurta Memo") (ECF 103-1 at 242). *See also Doyon*, 58 F.4th at 1238-39 (quoting this language).

[5] "Absent clear evidence to the contrary, a diagnosis rendered by a licensed psychiatrist or psychologist is evidence the veteran had a condition that may excuse or mitigate the discharge." Kurta Memo (ECF 103-1 at 242).

[6] The defendant also argues that the plaintiff met medical-retention standards based on the arguments he made during the court-martial proceedings. This argument is less salient because the focus of those proceedings was on the plaintiff's character rather than on objective medical standards under Army regulations. Additionally, these arguments were made for the purposes of minimizing the plaintiff's culpability and securing a lesser sentence; they were unrelated to the medical issues on which the plaintiff's claim here depends. Therefore, their probative value to this claim must be assessed and addressed before the ABCMR can rely on them.

respect.  If the ABCMR decides that the photograph and witness statement are insufficient evidence of the plaintiff's injury, the ABCMR must explain why.  The Army has not adequately addressed the plaintiff's evidence.  Allowing the Army to evade its legal obligations due to its own failure to document properly the plaintiff's injury and consequential illnesses at the time they were incurred would run afoul of the "liberal consideration" standard the ABCMR was required to apply.  *See Doyon*, 58 F.4th at 1243.

Even if the ABCMR had decided that there was insufficient evidence of TBI, PTSD, and headaches to warrant a referral to the DES, the plaintiff had still been diagnosed with an adjustment disorder.  Although there is no guarantee of entitlement to benefits, diagnosis of an adjustment disorder warranted referral to a MEB for further evaluation.  Army Reg. 40-501, ¶ 3-36.

The ABCMR's primary legal basis for denying the plaintiff a referral to a MEB has been rejected by the Federal Circuit.  *See LaBonte*, 43 F.4th at 1372 (holding that 10 U.S.C. § 1552(f) does not bar the correction of the plaintiff's records).  The defendant has pointed to no other law or regulation that would preclude a referral of the plaintiff's case to a MEB.

The ABCMR's failure to apply the "liberal consideration" standard under Army Regulation 40-501 to the plaintiff's claim was contrary to law.  Additionally, the ABCMR's disregard for the ample medical evidence of the plaintiff's injuries and illnesses incurred in the line of duty was arbitrary and capricious.  The plaintiff is entitled to referral to the DES process.

###   B.   The Plaintiff's Entitlement to Benefits

The plaintiff argues that the appropriate relief on this motion is retirement due to disability because "the evidence as formulated by the NARSUM shows that the only appropriate disposition would be medical retirement under 10 U.S.C. § 1201" and Army Regulation 635-40. (ECF 104 at 21.)

The defendant argues that in the event the ABCMR's decision was unlawful, "the only remedy is remand."  (ECF 106 at 13.)  The defendant argues that a MEB, a PEB, and the ABCMR should make factual findings first as to the plaintiff's fitness for service at the time he was separated.

A court reviewing an agency decision owes that agency some deference.  In the context of military-pay decisions made by an agency, "[w]hen there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene, though only to ensure that the decision is made in the proper manner."  *Fisher v. United States*, 402 F.3d 1167, 1177 (Fed. Cir. 2005).  "[W]hen an agency has not made an initial determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  *Byron v. Shinseki*, 670 F.3d 1202, 1205 (Fed. Cir. 2012) (quoting *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006)).  "It is not enough that only a few factual findings remain or that the applicant may have a strong case on the merits."  *Byron*, 670 F.3d at 1206.  "When there are facts that remain to be found in the first instance, a remand is the proper course."  *Id.*

The parties disagree, as a factual matter, how much of the plaintiff's case the Army has reviewed and resolved. The plaintiff argues that the NARSUM is concrete evidence that the plaintiff is entitled to full retirement-disability benefits and that no further fact-finding is necessary. The defendant argues that the NARSUM was created in error, that a MEB improperly evaluated the plaintiff's conditions as they existed in 2018 rather than in 2008, and that the Army has not fully evaluated the plaintiff's entitlement to relief.

The record supports the defendant's argument that the NARSUM may have been created in error. Deputy Assistant Secretary Blackmon referred the case "to the Office of the Surgeon General to determine if [the plaintiff] should have been retired or discharged by reason of disability." (AR 11.) The PEBLO referred the plaintiff's case directly to a MEB. (AR 1771.)

The defendant's argument is less persuasive regarding the timing of the MEB's evaluation of the plaintiff. Although the MEB evaluated the plaintiff's file in 2018, the MEB wrote that "PTSD [ ] fails to meet retention standards," and below that line wrote "Year: 2003." (AR 1778.) The MEB also wrote "Year: 2003" under the plaintiff's diagnoses for generalized anxiety disorder and major depressive disorder. (AR 1779-80.) The MEB wrote "Year: 2004" under the plaintiff's TBI diagnosis. (AR 1781.) Conversely, the ABCMR's conclusion that the MEB evaluated the medical conditions as they were in 2018 rather than in 2008 bears some weight given the ABCMR's expertise in interpreting NARSUMs. (*See* AR 2409.)

Regardless of the legal validity and accuracy of the NARSUM, the Army has not fully evaluated the plaintiff's entitlement to retirement-disability benefits in the first instance. Dr. Doane stopped the review process prematurely in 2018. The ABCMR stopped the review process at the first step of its review because it determined that a referral to the MEB was not warranted under its interpretation of the law and the record. The plaintiff has not been properly referred to a MEB, and the plaintiff has never been evaluated by a PEB.

Having determined that the ABCMR's decision was not "made in the proper manner," review of the Army's actions must end there. *See Fisher*, 402 F.3d at 1177. The Army must initiate and complete a review of the plaintiff's claim; it would be improper for a court to make such factual findings in the first instance. A remand to the Army for additional explanation and investigation is appropriate. *See Byron*, 670 F.3d at 1205-06.

Notwithstanding that holding, a remand will not permit the Army to wipe the slate clean and start from scratch. The ABCMR is required to refer the plaintiff's case to DES processing, to include evaluation by a MEB and a PEB. The DES process must give the plaintiff's claim "liberal consideration," *i.e.*, the Army must consider the plaintiff's evaluations by civilian doctors, and the relative lack of documentation during the plaintiff's service cannot be dispositive. *See Doyon*, 58 F.4th at 1243, 1247-48. The ABCMR must appropriately consider the medical evaluations of Dr. Hall, Dr. Lee, Dr. Rathi, and Dr. Crandall, and the ABCMR cannot rely exclusively on Dr. Doane's memorandum, which has already been deemed legally deficient in earlier proceedings.

In sum, although the plaintiff has made a strong argument that he was entitled to disability retirement in 2008, the Army must evaluate the plaintiff's eligibility for retirement-

disability benefits and, if it determines that the plaintiff was so entitled, calculate the benefits due to him in the first instance.  The case will be remanded to the ABCMR with instructions to refer the plaintiff for DES processing.  Because of the length of time this case has been taken, the Army will be given only four months to complete the DES process.  The plaintiff's case shall be given priority by the ABCMR and the Army.

## VI.    CONCLUSION AND ORDER

The ABCMR's decision on April 29, 2020, finding that the plaintiff was not entitled to DES processing is arbitrary and capricious and contrary to law.  The plaintiff's motion for judgment on the administrative record (ECF 100) related to the ABCMR decision is **GRANTED.**  The defendant's motion for judgment on the administrative record (ECF 103) is **DENIED**.  The ABCMR decision is **VACATED**.  Although the plaintiff urges the Court to find that the plaintiff was entitled to disability retirement, a remand to the Army is more appropriate to permit the Army to calculate what, if any, entitlements are due to the plaintiff.  The relief requested by the plaintiff in his motion for judgment on the administrative record (ECF 100) is **DENIED**.

The case is **REMANDED** to the ABCMR until **August 30, 2023**.  On remand, the ABCMR shall refer the plaintiff's case for DES processing, *i.e.*, evaluation by a MEB and PEB. The ABCMR shall give the plaintiff's claim "liberal consideration" regarding his diagnoses of PTSD and TBI.  *See Doyon v. United States*, 58 F.4th at 1247-48.  The ABCMR shall review the administrative record and consider the medical evaluations by Dr. Hall, Dr. Lee, Dr. Rathi, Dr. Shappell, and Dr. Crandall.  The ABCMR shall not draw dispositive conclusions from the lack of documentation in the plaintiff's records contemporaneous with the plaintiff's alleged injury and shall not rely exclusively on Dr. Doane's advisory opinion.  The ABCMR shall determine whether the plaintiff is entitled to disability-retirement benefits under 10 U.S.C. § 1201, Army Regulation 635-40, Army Regulation 40-501, and any other applicable laws.

The ABCMR shall complete the remand by **August 30, 2023**.  The parties shall file a joint status report by **September 6, 2023**, advising the Court as to whether further proceedings are necessary and, if so, proposing a schedule for such proceedings.

The case is **STAYED** pending further order of the Court.  The provisions of Rule 52.2(b)(1)(D) of the Rules of the Court of Federal Claims are **WAIVED**.  The Clerk is **DIRECTED** to serve a copy of this Opinion and Order on the Army Review Boards Agency at:

Office of Army Review Boards Agency
251 18th Street South, Suite 385
Arlington, VA 22202-3531

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**