# In the United States Court of Federal Claims

No. 18-1784C
Filed: October 30, 2024
NOT FOR PUBLICATION

**ROBERT J. LABONTE, JR.,**

    *Plaintiff*,

v.

**UNITED STATES,**

    *Defendant.*

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

    The plaintiff, Robert J. LaBonte Jr., served in the United States Army ("Army") from 2002 until his involuntary separation in 2008. His Army service included a deployment in 2003 to Tikrit, Iraq. The plaintiff alleges that he developed post-traumatic stress disorder ("PTSD") and a traumatic brain injury ("TBI") during his deployment. The plaintiff went absent without leave ("AWOL") in 2005 to avoid a second deployment to Iraq, causing the Army to court-martial and discharge him for bad conduct. Due to the plaintiff's PTSD and TBI, however, the Army has upgraded the characterization of the plaintiff's service to honorable.

    The plaintiff sued the defendant, acting through the Army, to alter his service records to allow him to receive retirement benefits for his disabilities. On the most recent remand, the Army Board for Correction of Military Records ("ABCMR") held on September 7, 2023, that the plaintiff is entitled to disability-retirement benefits with an 80 percent disability rating effective from March 13, 2008. On August 9, 2024, the plaintiff filed a motion for judgment on the administrative record challenging the ABCMR's determination of the effective date of his disability-retirement benefits. He argues that the effective date of his retirement and benefits should be June 30, 2004, or in either 2006 or 2007. The defendant opposes the plaintiff's motion and has cross-moved for judgment on the administrative record.

    The plaintiff has abandoned his claim that his retirement benefits should begin no later than June 30, 2004. Further, his failure to assert either the 2006 or the 2007 dates before the ABCMR has resulted in the waiver of his challenge the ABCMR's decision. Moreover, having previously argued to the Court that he was entitled to retroactive medical retirement as of his 2008 discharge, the plaintiff is judicially estopped from arguing his entitlement from any other date.

Accordingly, the plaintiff's motion for judgment on the administrative record is denied. The defendant's motion for judgement on the administrative record is granted.

## I.   FACTUAL BACKGROUND

### A.   The Plaintiff's Military Service

The following is an abbreviated version of the factual background. A fuller version of the facts is provided in *LaBonte v. United States*, 43 F.4th 1357 (Fed. Cir. 2022) and in the opinion on remand. *LaBonte v. United States,* No. 18-1784C, 2023 WL 3197825 (Fed. Cl. May 2, 2023).

The plaintiff enlisted in the U.S. Army in 2002, at the age of 18 years old. (AR 792-93.) After completing training, he was deployed to Tikrit, Iraq, in 2003. (*Id.* at 796.) The plaintiff's duties included providing convoy security as a gunner, guarding enemy prisoners of war, and manning guard towers. (AR 797.) The plaintiff asserts that he endured traumatic experiences while in Iraq. He engaged in several firefights with insurgent groups, and his base was regularly mortared. The convoy vehicles often ran into improvised explosive devices, which killed some of the plaintiff's fellow soldiers.

On one night in February 2004, the plaintiff alleges that he fell from a 30-foot-tall guard tower. Another soldier found the plaintiff unconscious and lying in a pool of his own blood at the base of the tower. The plaintiff was taken to a medical-aid station and given stitches and over-the-counter pain medication but no further medical treatment. The plaintiff returned to guard-tower duty the following night. (AR 800, 817-818, 2465.) The Army has no record of the plaintiff's fall or the medical treatment the plaintiff received that night. The main evidentiary record consists of the plaintiff's affidavit, an affidavit of the soldier who found the plaintiff, and a photograph from the scene.

The plaintiff's demeanor changed after his fall, and he started to believe that he would not survive his tour in Iraq. He experienced nightmares, panic attacks, mood swings, paranoia, and bouts of depression. His communications with family became erratic and infrequent. (AR 801-02.) After returning from his deployment, the plaintiff sought help for his mental-health problems from his chain of command but was told "to toughen up." (AR 804.) In June 2004, the plaintiff sought treatment at the Fort Hood Mental Health Clinic, where he was diagnosed with an adjustment disorder. The record does not reflect that he received any treatment, and there is no indication that a psychologist or psychiatrist saw the plaintiff. (*See* AR 117.)

Shortly after that visit to the mental health clinic, the plaintiff learned that his unit would redeploy to Iraq. In February 2005, the plaintiff completed a pre-deployment health assessment and checked boxes describing his health as excellent and indicating that he had not sought counseling or care for his mental health in the past year. (AR 1424.) The plaintiff subsequently challenged this latter indication, explaining to the ABCMR that he had told his chain of command that he was mentally unfit to return to Iraq. (AR 805.) The plaintiff went AWOL rather than return to Iraq; he was AWOL from November 16, 2005, until June 5, 2006. (AR 1176.)

The plaintiff was court-martialed for desertion. He pleaded guilty and was sentenced to forfeit $849 per month for four months, to be confined for four months, and to be discharged from the Army with a bad-conduct discharge. (*Id.*) The plaintiff was confined for 100 days and discharged from the Army on March 13, 2008. (AR 1597.)

### B.   Subsequent Medical Diagnoses

In 2012, the plaintiff sought treatment from a private psychologist, Mark Hall, Ph.D. Dr. Hall diagnosed the plaintiff with PTSD. (AR 810.) Dr. Hall also believed the plaintiff had "sustained some degree of closed-head injury when he fell from the guard tower, the evidence being the head wound, the loss of consciousness, amnesia, disorientation at the time, and perhaps also the ringing of the ears." (*Id.*)

In 2014, the plaintiff was evaluated by a psychiatrist, Bandy Lee, M.D. Dr. Lee reported that after the plaintiff was injured, he experienced "debilitating cluster headaches (a severe form of migraine) twice weekly and constant tinnitus (ringing in the ears)." (AR 765.) Dr. Lee diagnosed the plaintiff with Major Depressive Disorder and PTSD, noting that "his actions of AWOL are entirely consistent with PTSD and to be expected." (AR 767-68.)

In 2015, the plaintiff was evaluated by a neurologist, Sanjay P. Rathi, M.D. After evaluating the plaintiff's symptoms and an MRI of the plaintiff's brain, Dr. Rathi concluded that the plaintiff's "headaches are causally related to the original traumatic brain injury and . . . the patient suffered with what today would be defined as concussive head injury with attendant sequelae consistent with 'post concussive' changes in behavior and personality, further complicating his development of depression, anxiety, insomnia, and also potentially contributing to the cognitive and behavioral difficulties that he has had." (AR 187.)

### C.   Application to Correct Military Records

In 2014, the plaintiff applied to the Army Discharge Review Board to upgrade his discharge status to General, Under Honorable Conditions. During the Army's review of the plaintiff's discharge status, the plaintiff's medical history was evaluated by an Army psychiatrist, Cynthia M. Shappell, M.D. (AR 116-18.) Dr. Shappell noted that the plaintiff's military records were "void of documentation of PTSD symptoms," but that the plaintiff had been diagnosed with an adjustment disorder by an Army behavioral-health specialist in June 2004. (AR 117.) Dr. Shappell noted that "based on the symptoms documented in [the June 2004 intake form], it is clear that the applicant was suffering from a diagnosis more severe than [a]djustment [d]isorder, most likely PTSD." (*Id.*) Dr. Shappell recommended that the plaintiff be referred to the Army's disability evaluation system ("DES") for processing for a possible medical retirement. (*Id.*)

The Discharge Review Board voted to grant the plaintiff clemency by upgrading his characterization of service to general, under honorable conditions. (AR 641.) The Discharge Review Board noted that there was "clear evidence of PTSD." (AR 647.)

The plaintiff also applied for benefits from the Department of Veterans Affairs ("VA"). A VA psychologist, Brian Crandall, Ph.D, found that the plaintiff "was experiencing PTSD,

Depression, Anxiety, and mTBI symptoms post his deployment from Iraq in 2004."[1]  (AR 1957.)  Dr. Crandall noted that the plaintiff "continues to severely struggle with his symptoms as evident by mood variability, poor sleep and appetite, low motivation and energy, poor concentration and focus, and frequent headaches, ringing in his ears, and periodic vomiting." (*Id.*)  Dr. Crandall further noted that those "symptoms inter[fere]d with his sleep, appetite, concentration, focus, energy, and ability to perform his duties." (*Id.*)  The VA currently rates the plaintiff's PTSD as 70-percent disabling and the plaintiff's headaches as 50-percent disabling; the plaintiff is therefore rated as 100-percent disabled.  (AR 123.)

Upon review of the Army Discharge Review Board's findings, Deputy Assistant Secretary of the Army Francine C. Blackmon directed the plaintiff's case to the Office of the Surgeon General "to determine if [the plaintiff] should have been retired or discharged by reason of physical disability through the Integrated Disability Evaluation System (IDES)."[2]  (AR 11.)

Before forwarding the plaintiff's case to the Office of the Surgeon General, an Army Physical Evaluation Board Liaison Officer ("PEBLO") submitted the plaintiff's case directly to a Medical Evaluation Board ("MEB"), which is the first processing step in the Disability Evaluation System ("DES").  (AR 1771-72.)  The MEB drafted a Narrative Summary ("NARSUM") indicating that the plaintiff had PTSD, Generalized Anxiety Disorder, Major Depressive Disorder (which was recurrent and moderate), and TBI (with residuals of migraine headache and cognitive impairment).  (AR 1777.)  Each of these conditions independently caused the plaintiff to fail to meet retention standards.  (AR 1778-82.)

Following the MEB's determination, reflected in the NARSUM, the PEBLO forwarded the plaintiff's case to a senior MEB official, Eric Doane, D.O., for approval.  Dr. Doane refused to approve the MEB's determination.  (AR 1793.)  Dr. Doane noted that the "Army Board of Military Records was sent to your IDES to determine whether PDES WAS WARRENTED [*sic*] at the time of separation.  Clearly it was NOT warranted." (*Id.* (capitalization in original).)  Dr. Doane prepared a response to the ABCMR recommending that the ABCMR determine that the plaintiff was not entitled to disability processing at the time of separation.  (AR 77-79.)  Dr. Doane explained that the plaintiff's medical records reflected that the plaintiff had been in good health at the time he separated.

---

[1] The term "mTBI" likely stands for "mild Traumatic Brain Injury."  *See* C. Lefevre-Dognin et al., *Definition and epidemiology of mild traumatic brain injury*, PubMed (May 6, 2020), https://pubmed.ncbi.nlm.nih.gov/32387427/ (last visited Apr. 27, 2023).

[2] The plaintiff has explained that IDES exists for servicemembers who are currently separating, but that the plaintiff is entitled to processing under the Legacy Disability Evaluation System ("LDES").  (ECF 104 at 6-7.)

Following its receipt of Dr. Doan's opinion, the Army Review Boards Agency sent the plaintiff a letter explaining that the plaintiff was not entitled to disability processing at the time of separation from active duty. (AR 73.)

## II.   PROCEDURAL HISTORY

The plaintiff filed suit on November 20, 2018, seeking back pay, retirement pay, and disability benefits and allowances. (ECF 1.) The defendant moved to dismiss and moved for judgment on the administrative record. (ECF 24.) On June 21, 2019, the case was transferred to the undersigned. (ECF 30.) The plaintiff filed a cross-motion for judgment on the administrative record and responded to the defendant's motion. (ECF 52.)

After oral argument on the motions, all claims except the one for medical retirement were dismissed for lack of subject-matter jurisdiction under RCFC 12(b)(1) due to the plaintiff's conviction by court martial. On the claim that the plaintiff should have been considered for medical retirement it was determined that "the ABCMR [had] relied on a medical opinion that failed to consider medical evidence as required by 10 U.S.C. § 1552(h)(2)(B)." (ECF 57.) Accordingly, the ABCMR's "decision to reject the plaintiff's claim for medical retirement [was] contrary to law." (*Id*.) The case was remanded to the ABCMR with instructions to "obtain a further medical opinion that considers the medical evidence as required by law and thereafter resolve the plaintiff's claim." (*Id.*)

The ABCMR completed the remand in 2020. The ABCMR determined that the plaintiff "has not demonstrated by a preponderance of evidence an error or injustice warranting the requested relief, specifically, that the record be corrected to reflect a disability retirement with a disability rating of at least 80 percent." (AR 2408.) The ABCMR noted that the plaintiff had been diagnosed with PTSD and TBI related to his service but found that the plaintiff was not eligible for disability processing because of his bad-conduct discharge.

The ABCMR considered the NARSUM and believed that it was "based on the state of [the plaintiff's] disabilities in 2018 and not prior to service separation in 2008." (AR 2409.) The ABCMR acknowledged "the diagnosed PTSD and TBI that existed prior to service separation" but believed "a preponderance of the evidence reflected that the applicant met medical retention standards prior to service separation and referral into DES or disability separation/retirement was not warranted." (*Id.*) The ABCMR noted that it had to give the plaintiff's arguments "liberal consideration and clemency," but reasoned that the PTSD and TBI should be used only as evidence of mitigation of the characterization of the plaintiff's service and were not related to disability benefits. (AR 2409.) The plaintiff's application was denied. (AR 2410.)

When the case was returned to the court, the parties filed a second round of cross-motions for judgment on the administrative record. The defendant also moved to dismiss the plaintiff's claim for lack of jurisdiction under RCFC 12(b)(1) and for failure to state a claim pursuant to RCFC 12(b)(6). The Court held that subject-matter jurisdiction over the plaintiff's claim existed. *LaBonte v. United States*, 150 Fed. Cl. 552, 557-59 (2020). Additionally, Army Regulation 635-40 did not preclude the plaintiff from disability-retirement processing. *Id.* at 560-61. Under

10 U.S.C. § 1552(f), however, the ABCMR lacked statutory authority to change the reason of the plaintiff's separation.  *Id.* at 561-64.  The plaintiff's claim was thus dismissed.

The plaintiff appealed, and the Federal Circuit reversed the dismissal.  The Federal Circuit held that § 1552(f) does not prohibit the correction of the plaintiff's records if he is entitled to disability retirement benefits for PTSD and TBI.  *LaBonte v. United States*, 43 F.4th 1357, 1374 (Fed. Cir. 2022).

The case was remanded, and the parties filed a third round of cross-motions for judgment on the administrative record.  The plaintiff moved for judgment on the administrative record.  (ECF 100.)  The plaintiff requested that the ABCMR's decision be overturned, and that he be awarded medical retirement by the court from March 13, 2008.  The defendant cross-moved for judgment on the administrative record.  (ECF 103.)  Oral argument was held on May 2, 2023, and that same day, the case was remanded to the ABCMR with the instructions that the plaintiff be referred for DES processing.  *LaBonte*, 2023 WL 3197825, at *12.  The ABCMR was instructed to give the plaintiff's claim liberal consideration regarding his diagnosis of PTSD and TBI.  Moreover, the ABCMR was ordered to determine "whether the plaintiff is entitled to disability-retirement benefits under 10 U.S.C. § 1201, Army Regulation 635-40, Army Regulation 40-501, and any other applicable laws."  (*Id.*)

After the second remand order, on July 6, 2023, ABCMR received a new medical advisory opinion from the ARBA medical advisors.  (AR 2527.)  On July 10, 2023, a copy of the ARBA medical advisory opinion was provided to the plaintiff and for comment.  (AR 2536.)  The plaintiff responded on July 28, 2023, to provide an independent medical examination and a VA rating decision.  (AR 2536.)  On August 17, 2023, a copy of the ARBA medical advisory opinion addendum was provided to the ABCMR.  (AR 2542.)  The plaintiff was also provided with the addendum.  The plaintiff responded, providing further additional documentation.  (*Id.*).

On September 7, 2023, the ABCMR issued its decision granting the plaintiff's request for medical retirement.  (AR 2487.)  The ABCMR found that at the time of the plaintiff's separation in March 2008, he was suffering from PTSD, major depressive disorder ("MDD"), and generalized anxiety disorder ("GAD").  (*Id.*)  The ABCMR concluded "that, had [Mr. LaBonte] been separated for disability in 2008, he would have been assigned an 80% rating and eventually placed on the permanent disability retired list."  (AR 2546.)  The ABCMR therefore granted retirement with an 80% disability rating effective March 13, 2008, the date of discharge.  (AR 2547.)

On August 9, 2024, the plaintiff filed a motion for judgement on the administrative record arguing that ABCMR acted arbitrarily and capriciously by failing to award him backpay and retirement benefits from an earlier effective date than March 13, 2008.  (ECF 126.)  On the same day, the defendant filed a renewed motion for judgment on the administrative record.  (ECF 127).  The parties' filed their responses and replies on September 20, 2024, and their replies on October 10, 2024.  (ECF 131; ECF 132; ECF 136; ECF 137.)  A hearing on the motions was held on October 30, 2024.

### III.   JURISDICTION

Subject-matter jurisdiction over the plaintiff's claim exists. *LaBonte*, 150 Fed. Cl. at 559. That holding was not disturbed on appeal. *LaBonte*, 43 F.4th at 1363.

### IV.   STANDARD OF REVIEW

The parties have cross-moved for judgment on the administrative record under RCFC 52.1.  In consideration of such motions, the court's review is limited to the administrative record, and the court makes findings of fact as if it were conducting a trial on a paper record.  *See Young v. United States*, 497 F. App'x 53, 58-59 (Fed. Cir. 2012) (per curiam), *cert. denied*, 569 U.S. 964 (2013).  A party must meet its burden of proof based solely on the evidence in the administrative record.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005).

In reviewing decisions of military corrections boards, the courts apply the standard of the Administrative Procedure Act ("APA").  Under this standard, the court must uphold a decision of a military corrections board unless it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Sharpe v. United States*, 935 F.3d 1352, 1358 (Fed. Cir. 2019) (quoting 5 U.S.C. § 706(2)(A)).  A court's scope of review of a correction board's decision is narrowly confined to "'whether the agency examined the relevant data and articulated a satisfactory explanation for its decision, including a rational connection between the facts found and the choice made.'"  *Sharpe*, 935 F.3d at 1358 (quoting *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019)) (cleaned up).  A court cannot substitute its judgment for that of the agency but can determine whether the agency decision was "'within the bounds of reasoned decisionmaking.'"  *Sharpe*, 935 F.3d at 1358 (quoting *Dep't of Com.*, 139 S. Ct. at 2569).

The failure by a claimant to assert a claim "in either [an] initial or reconsideration petition before [a corrections b]oard" risks waiving the ability to challenge the corrections board's decision in court.  *Metz v. United States*, 466 F.3d 991, 999 (Fed. Cir. 2006); s*ee Murakami v. United States*, 398 F.3d 1342, 1354 (Fed. Cir. 2005) (affirming determination that a plaintiff who fails to raise an argument before a military corrections board is precluded from raising that issue for the first time before the Court of Federal Claims).

A plaintiff also must raise before a corrections board "the claim itself, not merely have pointed to facts that, in his view and in hindsight, support it."  *Martinez* v. *United States*, 914 F.2d 1486, 1489 (1990)*.*  Moreover, "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."  *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952); *see also Frecht v. United States*, 25 Cl. Ct. 121, 131 n.7 (1992) ("Failure to timely raise objections and issues to a board of inquiry constitutes a waiver of that right in subsequent litigation.").

## V.   DISCUSSION

The plaintiff's current motion for judgment on the administrative record challenges only whether ABCMR erred by setting March 13, 2008, as the effective date for the plaintiff's retroactive medical retirement. The plaintiff argues that the ABCMR's decision is arbitrary and capricious because it failed to afford liberal consideration to the plaintiff's arguments and did not consider: (1) "that Mr. LaBonte was unfit for duty long before his official separation date"; (2) that the Army failed to refer the plaintiff for "an MEB as required by its own regulations" during his service; and (3) that between March 7, 2007 and March 13, 2008, the plaintiff was in unpaid military service while on terminal leave. (ECF 126 at 12.) The plaintiff argues, for the first time, that he is entitled to backpay and benefits retroactive from either June 5, 2006, or in the alternative, March 7, 2007.[3] (*Id.* at 4.)

The first date, June 5, 2006, is the date the plaintiff returned to Ft. Hood after going AWOL. The plaintiff claims that upon his return to Ft. Hood, the Army had a duty to reassess his fitness for duty and refer him for DES processing. (ECF 126 at 12.) The plaintiff cites the Army Regulation 635-40, requiring that "soldiers who fail to meet medical retention standards . . . be referred for an MEB to determine their ability to continue service. (ECF 126 at 15.) The plaintiff argues that the 2018 NARSUM provides evidence that the plaintiff would have failed the Army's retention standards "well before March 2008" and, as a result, he is entitled to backpay and retirement benefits from June 5, 2006. (ECF 126 at 14). The plaintiff argues that the ABCMR's failure to consider this evidence resulted in a decision that is arbitrary and capricious.

In the alternative, the plaintiff argues that the ABCMR should have granted retirement as of the beginning of his excess leave on March 7, 2007. At this point, the plaintiff claims, he had fulfilled his court-martial sentence and had been placed on excess leave. He argues that between March 7, 2007, and March 13, 2008, he was "on active duty but not receiving any compensation." (ECF 126 at 16.) As a result, for more than a year he was deprived of wages, retirement benefits, and healthcare to which he was otherwise entitled. He claims that the ABCMR has a responsibility to correct this year-long administrative delay that deprived him of retirement benefits and cause a significant financial hardship at a time when it was evident the plaintiff was unfit for continued military service. (ECF 126 at 17.)

A party that fails to pursue a claim or argument cannot later raise a claim based on that abandoned claim or argument. This waiver can occur when a plaintiff "asserts a claim in its complaint but then fails to pursue it in a dispositive motion." *Chromalloy San Diego Corp. v.*

---

[3] The plaintiff did note in passing in a status report (ECF 120 at 1) that he had "determined that the effective date of his disability rating should be nearly four years earlier," but he did not mention specifically either the 2006 or the 2007 date and never requested consideration by motion before either the administrative or judicial tribunal of either of these dates as the effective date of his medical retirement. That passing reference in a status report is insufficient to preserve the argument.

8

*United States*, 145 Fed. Cl. 708, 740 (2019); *see also Ulman v. United States*, 214 Ct. Cl. 308, 314 (1977) (claim raised in a complaint but not in a motion for summary judgment was waived).

Parties likewise may not raise an issue or argument not previously raised to an administrative agency and then presented in court on a claim of error by the agency. *See Lewis v United States*, 476 F. App'x 240, 244 (Fed. Cir. 2012) ("claims not presented [to a correction board] are waived and that issue cannot be raised for the first time before the Claims Court"); *Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005) ("Arguments not made in the . . . tribunal whose order is under review are normally considered waived."); *Guardado v. United States*, No. 22-33C, 2023 WL 5426590, at *3 n.7 (Fed. Cl. Aug. 23, 2023) ("The plaintiff never raised any claim to the ABCMR that he was due promotion to E-3, and he has not pursued it in his motion for judgment on the administrative record. That claim is therefore waived."); *see also Conn. Steel Corp. v. United States*, 462 F. Supp. 2d 1322, 1323 (Ct. Int'l Trade 2006) ("Where a plaintiff made the strategic decision in the administrative proceeding, for whatever reason, not to raise the issue, it is estopped from changing that strategy later."); *Calabrian Corp. v. U.S. Int'l Trade Comm'n*, 794 F. Supp. 377, 383 (Ct. Int'l Trade 1992) (a party may not reverse the position it took before an agency and raise contrary arguments on appeal); *Mason v. Shinseki*, 25 Vet. App. 83, 95 (2011) ("the Court will not invent an argument for a represented party who had ample opportunity and resources to make that same argument, but, for whatever reason—be it strategy, oversight, or something in between—did not do so").

The parties do not dispute that the plaintiff abandoned the relief sought in his complaint for retroactive medical retirement effective from June 30, 2004.[4] When the plaintiff renewed his motion for judgment on the administrative record following remand from the Federal Circuit, he specifically sought relief from March 13, 2008, the date of his discharge. The ABCMR decision was vacated, and the plaintiff's claim was remanded so that the ABCMR could reconsider that claim presented by the plaintiff in court. The plaintiff now proposes, however, one of two different possible dates, "a retirement date of June 5, 2006, when [the plaintiff] voluntarily returned to Fort Hood, or, at the latest, of March 7, 2007, when he completed his court-martial sentence." (ECF 131 at 17.)

Throughout the prior proceedings before the ABCMR and in court, the plaintiff consistently presented one of two dates from which the medical retirement he was seeking would become effective: either June 30, 2004, the date requested in his complaint, or March 13, 2008, the date he himself proposed in his motion for judgment on the administrative record. Prior to the ABCMR granting the plaintiff the full relief he had theretofore been seeking, the plaintiff had

---

[4] In his initial ABCMR application, the plaintiff requested an effective date of June 30, 2004. He alleged that "[a]t the latest, his retroactive medical retirement should take effect as of 30 June 2004, the date he sought help at the Fort Hood Mental Health Clinic." (AR 31.) The plaintiff supported his claim by pointing out that by that date "his PTSD, TBI, and headaches, [i]ndividually and in combination, had made him unfit to perform the duties required of him." He concluded that he was "entitled to back retirement pay from 30 June 2004 through 20 November 2012." (*Id.*)

9

never proposed or argued for any other effective date.  Throughout the course of the remand that resulted in his obtaining relief, following his request in court for medical retirement effective March 13, 2008, when the ABCMR was considering that date, the plaintiff never objected to that date and never proffered any other effective date.  By forgoing the opportunity to present any date, the plaintiff has waived his chance to make the argument now.  *Metz*, 466 F.3d at 999 (a failure to assert a claim "in either [an] initial or reconsideration petition before [a military corrections b]oard" risks waiver of a party's ability to challenge the correction board's decision).

The record is devoid of any indication that the plaintiff requested the ABCMR apply either the 2006 or 2007 date as the correct effective date for his medical retirement.  In the extensive briefing in this case spanning more than a decade, the plaintiff only mentions the June 5, 2006, once in his initial application as the date when he returned to Fort Hood after being AWOL for five months.  (AR 675.)  The plaintiff neither discussed nor argued to the ABCMR that this date was the date on which his medical retirement should become effective.  As for the date of March 7, 2007, the only time this date appears in the administrative record is to document that date as when the plaintiff was placed on his terminal, excess leave.  (AR 328; AR 2388)

Instead of presenting these alternatives dates to the ABCMR for its reasoned consideration, the plaintiff obtained the relief he sought from the ABCMR and, only thereafter, claimed in the present motion for judgment on the administrative record that either of his alternatives dates was the appropriate date rather than the March 13, 2008, date.  He argues further than the ABCMR had an independent responsibility to search the record, without being prompted by the plaintiff, to apply an appropriate date that the record would support.  Under the Federal Circuit's relevant precedents of *Metz*, 466 F.3d at 999, *Murakami*, 398 F.3d at 1354, and *Martinez*, 914 F.2d at 1489, the plaintiff may not proceed in this manner.

The reason is obvious.  The court sits to review a decision of a corrections board.  The scope of a court's review is narrow, and the decision of a corrections board will be upheld unless it is arbitrary and capricious.  How can a decision be arbitrary and capricious if a corrections board was not given an opportunity to consider and determine an argument subsequently presented to a court.  Such an approach would set courts up as super-corrections boards, roving without limit to impose their own view of what law and justice require.  Courts are especially ill-suited to that role, especially where the military departments are concerned.  *Dodson v. United States,* 988 F.2d 1199, 1204 (Fed.Cir.1993) ("military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs."); *Knightly v. United States*, 227 Ct. Cl. 767, 769 (1981) ("It is not the business of the court to run the Army.") (citing *Orloff v. Willoughby*, 345 U.S. 83 (1953)).

In his 2023 motion for judgment on the administrative record the plaintiff repeatedly argued that he "failed to meet retention standards *at the time of his separation*."  (Emphasis added.)  (ECF 100 at 28.)  His briefs presented no date other than his 2008 date of separation from the Army as the effective date of his medical retirement.  He even acknowledged in a status report that the ABCMR's determination, with an effective date of March 13, 2008, "grants [him] the full relief that he sought."  (ECF 114 at 1.)  The plaintiff only alluded to other potential dates

by noting in his reply brief that he "did not meet retention standards prior to separation." (ECF 108 at 16.)  These statements are insufficient to preserve a claim for a date other than 2008.

The plaintiff also never objected to the ARBA medical advisory opinion or the ABCMR's determinations despite having ample opportunities to do so.  The plaintiff's failure to object further supports a finding of waiver.  *See Frecht*, 25 Cl. Ct. at 131 n.7.

Specifically, the plaintiff's decision not to object to the medical advisory opinion would make it unfair for the court to override the administrative decision without providing the administrative body an opportunity to consider and adjudicate in the first instance the plaintiff's argument.  *L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37.

The plaintiff had ample opportunity to object to the 2008 effective date.  A new medical advisory opinion was obtained from the ARBA on July 6, 2023.  (AR 2527.)  On July 10, 2023, a copy of that advisory opinion was provided to the plaintiff with an opportunity to comment.  (AR 2536.)  The ARBA medical advisory opinion, while not concluding that the plaintiff should receive medical retirement as of 2008, made clear that its consideration was regarding the 2008 date of discharge.  The advisory opinion noted that "[h]ad the applicant been discharged due to physical disability in 2008 rather than administratively discharged, he would have been placed on TDRL (Temporary Disability Retirement List) per 38 CFR Part 4, section 4.129 Mental disorders due to traumatic stress."  (AR 2648.)

The plaintiff responded on July 28, 2023, providing an independent medical examination and a VA rating decision.  (AR 2536.)  The plaintiff's response noted that he only "disagree[d] in one respect: the [Advisory Opinion] failed to properly evaluate the evidence of TBI."  (AR 2536-37.)  The plaintiff made no mention of the advisory opinion's consideration of the 2008 date and did not challenge the ARBA's consideration of the plaintiff's date of discharge as the presumptive effective date.

The plaintiff had another opportunity to object upon receiving an updated ARBA addendum, which addressed the plaintiff's response to the initial advisory opinion.  (AR 2542.)  On August 25, 2023, the plaintiff once again responded, providing still further documentation for the ARBA's consideration.  (*Id*.)  As before, the plaintiff did not raise any issue regarding the dates for the evaluation of the plaintiff's medical disability.

Only after the ABCMR determined the plaintiff was entitled to the full relief he had been seeking did the plaintiff decide that the March 2008, date should be extended back to some earlier date.

The plaintiff abandoned the initial proposed effective date of June 30, 2004.  The plaintiff has also waived the 2006 and 2007 effective dates by failing to present either date to the ABCMR and by failing to object to the use of the 2008 date by the ARBA in its medical advisory opinion.  The plaintiff will not be allowed to abandon one argument, waive another, and then challenge the ABCMR's decision to grant him the relief that by he had previously been requesting, including specifically to this Court.

The plaintiff claims that the ABCMR's decision is arbitrary, capricious, and not supported by substantial evidence because the ABCMR failed to consider the evidence that the plaintiff should have been medically retired prior to his separation date. Because the plaintiff did not present the issue of alternative effective dates to the ABCMR, he may not raise it now. *Davis v. Dep't of Agric.*, No. 2024-1086, 2024 WL 4503669 at *2 (Fed. Cir. Oct. 16, 2024) (argument not raised before an administrative agency is not preserved for review under the arbitrary and capricious standard).

In any event, the ABCMR's decision on its face is reasonable, granting the plaintiff the relief he had requested. Upon remand, the plaintiff was able to supplement the record twice to include additional documentation. The plaintiff's additional evidence was considered by the ARBA medical advisors, which addressed the plaintiff's additional information in an addendum to their earlier medical advisory opinion. (AR 2542.) The plaintiff's disability status on the date of his separation from the Army was specifically considered during this process, and the plaintiff raised no objection. (AR 2648.) That effective date was then considered by the ABCMR (AR 2535) and incorporated into its conclusions. (AR 2546.) That conclusion reflected precisely what the plaintiff had requested. No other possible effective date was considered because the plaintiff proposed no other date. With the record devoid of any evidence supporting another date on which the plaintiff's medical retirement because the plaintiff never supplied such evidence, the decision of the ABCMR is reasonable and not arbitrary and capricious.

The plaintiff may disagree with the ABCMR's conclusions, but disagreement is not enough to allow a court to substitute its judgment for that of the agency under the applicable APA standard of review. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

## VI.   CONCLUSION

The plaintiff's abandonment of his argument that his medical retirement should begin no later than June 30, 2004, and his failure to assert either of his proposed alternative dates of 2006 or 2007 result in the waiver of any challenge to the ABCMR's determination awarding the plaintiff relief as of March 13, 2008. Moreover, the plaintiff is judicially estopped from arguing that his retirement should be effective from any date other than March 13, 2008.

The plaintiff's motion for judgment on the administrative record (ECF 126) is **DENIED**. The defendant's motion for judgment on the administrative record (ECF 127) is **GRANTED**. By **November 13, 2024**, the parties shall jointly propose the text of the final judgement to be entered granting the plaintiff relief in accordance with the ABCMR's decision.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**